[S. F. No. 14958. In Bank.—April 23, 1934.]

AMERICAN SECURITIES COMPANY (a Corporation), Petitioner, v. JOHN F. FORWARD, Jr., et al., Respondents.

Orrick, Palmer & Dahlquist for Petitioner.

C. L. Byers, City Attorney, Gilmore Tillman, Assistant City Attorney, Thomas Whelan, District Attorney, and James B. Abbey, Frank T. Dunn and E. I. Kendall, Deputies District Attorney, for Respondents.

Harold Jacoby, as *Amicus Curiae* on Behalf of Respondents.

THE COURT.—A hearing was granted in this case in order to give further consideration to the question whether the statute imposes a mandatory duty to levy a tax sufficient to cover past due principal and interest on the bonds as well as that to become due prior to the next annual levy. We hereby adopt the following portion of our former opinion as a proper statement of facts and determination of other issues:

"Mandate to compel either the respondent city council of the city of San Diego or the respondent board of supervisors of the county of San Diego to levy, at the time of the next general tax levy for municipal or county purposes, upon all of the lands within Municipal Improvement District No. 1 in said city, a special assessment tax in an amount clearly sufficient to pay all of the principal and interest which has become due or will become payable on

bonds of the district heretofore issued, before another tax levy for municipal or county purposes can be made available for the payment of principal and interest on said bonds.

"Municipal Improvement District No. 1 was organized under the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849), and pursuant to a resolution of intention adopted by the city council of the city of San Diego on August 20, 1928. The purpose of the proceedings was to acquire rights of way and to construct two bridges and a causeway over Mission bay with street improvements at the approaches of said bridges. The estimated cost of the improvement was $725,000 and upwards. The proceedings were carried forward by the city council of said city, the contract was let and the contractors entered upon the performance of the work. Certain property owners affected commenced an action to enjoin the performance of the contract. After trial on the merits the court found for the defendants and entered judgment accordingly. On appeal by the plaintiffs the judgment was affirmed on February 25, 1931. (*Southlands Co.* v. *City of San Diego*, 211 Cal. 646 [297 Pac. 521].) Bonds were issued by the city treasurer as provided in the act in the principal sum of $737,418.34, all dated January 21, 1931. The first principal amount of $46,000 will accrue on January 21, 1936, and the last on June 21, 1951. On July 2, 1932, the first semi-annual interest coupons attached to said bonds matured and there became due and payable on account of said interest thereon the sum of $64,030.01. On September 1, 1931, the board of supervisors of said county, for the purpose of raising funds for the payment of said interest when it should become payable, levied against the property in the district a special assessment tax at a rate calculated to raise the sum of $71,835.95, or 11.2 per cent more than required if collected in full.

"On January 2, 1933, there became due and payable on account of interest coupons then maturing the sum of $22,122.55 and a like sum on July 2, 1933, or a total for this year of $44,245.10. On September 1, 1932, the board of supervisors for the purpose of paying interest coupons maturing in 1933 levied a special assessment on lands in the district sufficient to raise, if collected in full, the sum

of $49,288.34, or approximately 11.2 per cent more than the amount required to pay the 1933 interest coupons. Of said levies made in 1931 and 1932 there remain unpaid and delinquent at this time certain individual assessments totaling approximately $31,259.18, or about 25.8 per cent of the total levies made for the two years. The petitioner is the owner of said bonds in the principal amount of $74,000 and it is alleged in the petition that the total now unpaid on account of the interest coupons on all of the bonds of the district, including its own, is $28,660.

"The petitioner prays that the court determine which legislative body, the city council of the city or the board of supervisors of the county, is the legislative body required by law to levy assessment taxes to satisfy the principal and interest on said bonds, also that when the proper legislative body is determined upon, the court compel said legislative body to levy a tax for the year 1933–1934 sufficient to pay not only the interest coupons maturing on January 2 and July 2 in the year 1934, but also to pay the amount unpaid on the interest coupons for the years 1932 and 1933.

"The question as to which legislative body is the proper one to levy the assessment tax is not difficult of solution. The city council of the city initiated the proceedings and all of the steps taken thereafter in carrying the improvement to completion were taken by it or under its direction or by officers of the city, including the establishment of the extent of the assessment district and the several assessment zones therein, the hearing and passing upon protests on behalf of numerous property owners in the district, the letting of the contract and supervision of the work as it progressed, the acceptance of the work, the issuance of the bonds to represent the cost of acquiring property and of the improvement. The board of supervisors had nothing to do with the proceeding until, for some unaccountable reason, that board assumed the power to levy the assessment taxes in 1931 and again in 1932. Section 2 of the act of 1925 provides 'that the legislative body initiating the proceeding and adopting the resolution of intention therefor, as hereinafter provided, shall thereafter have exclusive jurisdiction of the proceeding'. That the levy and collection of the assessment taxes to satisfy the coupons for interest and principal on the bonds issued to represent the cost

of the improvement are part and parcel of 'the proceeding' as contemplated by the act can admit of no doubt. A reading of the statute demonstrates that the legislative body which initiates the proceeding is the only one having jurisdiction to complete it and the provisions of the act with reference to the issuance of bonds for the cost of the work and the levy of assessment taxes to satisfy the same are inseparably a part of the plan for the accomplishment of which the statute was created.

■ "Of course 'the legislative body initiating the proceeding' must be the legislative body duly constituted under the terms of the act in order that the proceeding be regular. Whether the city council of the city of San Diego was authorized under the act to initiate and carry forward this particular proceeding was one of the main issues determined in *Southlands Co.* v. *City of San Diego, supra.* It was contended by the city in that case that its legislative body was the proper one to initiate and conduct the proceeding. This contention was upheld. A holding to the contrary would have required a reversal of the judgment in that case. The city is in no position to relitigate that question. It has become definitely settled. (*Price* v. *Sixth Dist.*, 201 Cal. 502 [258 Pac. 387].) It therefore appears beyond question that the respondent city council is the legislative body having exclusive jurisdiction to levy said assessment taxes."

■ The important question presented by this appeal is whether there is a mandatory duty on the part of the appropriate legislative body, which is, as we have seen, the city council, to levy a tax sufficient to pay principal and interest already due and delinquent, as well as that to become due in the ensuing tax year. In other words, does the act require the "cumulating" or "pyramiding" of the assessments? The constitutionality of such cumulative levies is beyond question. (See *Municipal Imp. Co.* v. *Thompson*, 201 Cal. 629 [258 Pac. 955]; *O. T. Johnson Corp.* v. *County of Los Angeles*, 128 Cal. App. 440 [17 Pac. (2d) 792]; *Roberts* v. *Richland Irr. Dist.*, 289 U. S. 71 [53 Sup. Ct. 519, 77 L. Ed. 1038].) The question is therefore to be answered by a construction of the terms of the statute.

■ A preliminary point raised by respondents, which should first be disposed of, is that the time for making the annual tax levy for the fiscal year 1933–1934 expired on

August 29, 1933, and that consequently the right to the relief demanded in the petition is a moot question. It is well settled that the obligation to levy such an *ad valorem* tax is a continuing one; and where by reason of the negligent or wilful refusal of the city to perform its duty during a particular year, or for other reasons the time for the levy of such tax elapses, the duty remains and the tax must be levied in the following or any subsequent year when it is possible to do so. This point was given thorough consideration by us in *Pasadena Junior College Dist.* v. *Board of Supervisors*, 216 Cal. 61 [13 Pac. (2d) 678], and the holding therein is determinative in the instant case. The petition prays for a writ requiring the levy at the time of the next general tax levy "and for each succeeding year thereafter" in a sufficient amount to pay past due and accruing principal and interest. This is a proper pleading to secure the relief demanded, if such relief is appropriate.

Section 41 of the statute before us, which is the principal section dealing with the enforcement of the bonds, provides in subdivision 1 that "there shall each year at the time of levying taxes for general municipal purposes be levied by the legislative body of such municipality against and upon all of the lands within said district a special assessment tax *in an amount clearly sufficient*, together with any moneys which are or may be in said fund, to pay all the principal which *has become* or will become payable and all interest which *has become* or will become payable on the bonds issued under the proceeding *before the proceeds of another tax levy* made at the time of the next general tax levy for general municipal purposes *can be made available* for the payment of said principal and interest". This section in express terms makes it mandatory upon the city to levy a tax, the amount of which must be "clearly sufficient", when added to certain other moneys, to pay delinquent principal and interest, as well as principal and interest to become due during the year. The phrase "has become . . . payable" unquestionably covers delinquencies. The duty to cumulate assessments, therefore, is laid down in section 41, subdivision 1.

This duty is neither qualified nor limited by other provisions. Section 41, subdivision 7, provides that whenever the bonds or payments of interest or principal thereon

"shall become due", and there is not sufficient money in the interest and sinking fund to pay the same, the legislative body "may, *pending the levy and collection of a special assessment tax therefor,* order the amount of money necessary to pay said bonds, or payment of principal or interest so falling due, to be transferred from the *general fund* . . . to said interest and sinking fund, and the amount of money so transferred shall be deemed a *loan* . . . and shall be repaid to the general fund from the first money coming into said interest and sinking fund thereafter". The purpose of the discretionary power thus given the municipality to make a loan to a depleted special fund is apparent from the express language of the provision. It is to prevent a default, and is temporary, "pending the *levy and collection*" of the tax. No intent to substitute the loan for the tax is indicated. Instead, the duty to levy the tax, imposed by subdivision 1, is again recognized by the language above quoted, and by the introductory sentence of subdivision 7, which states that *"In any event,* it shall be the duty of the legislative body, which is required by this section to levy the special assessment tax, to levy a special assessment tax upon all of said lands within such district clearly sufficient to pay the principal and the interest of said bonds as the same shall become payable, and said legislative body is *hereby vested with power and jurisdiction to do all and singular the things which in this section aforesaid it is declared shall be done by it."*

The same insistence upon the mandatory duty to tax, in spite of provision for other methods of securing moneys temporarily, is found in section 41, subdivision 6, which provides that the municipality "may" transfer from the general fund or from any fund which may be used for acquisitions or improvements of a similar character, to the interest and sinking fund, such amount as in its judgment should be transferred. Subdivision 6 then states: "It is the intention of this provision that *further assistance* in addition to that . . . which may be given as elsewhere provided in this act, may be given by the . . . municipality . . . and apart from the loans, and apart from the advances under the revolving fund elsewhere in this act provided."

■ In spite of the unqualified duty thus imposed by section 41, subdivision 1, recognized and not limited by other

sections or subdivisions, respondents contend that the municipality is not required to cumulate the assessments for the reason that in determining the amount of the tax they may take into account "any moneys which are *or may be*" in the fund. They assert that the duty of the land owner to pay his delinquent assessment may be relied upon by the city, and that the city may legitimately indulge the presumption that such delinquencies will be eliminated and that the money will come into the fund. Hence, they say, the legislative body has made an honest determination that a tax to cover payments *to become due,* will, together with moneys which *may be* in the fund, meet all requirements, including delinquencies.

We are unable to agree that the purpose, language and effect of the rest of the act can be nullified by an assumption of this sort. The legislative intention to require levy of a sufficient tax is unmistakable. A reasonable construction of the phrase relied upon by respondents must therefore be that it applies to such moneys as must *necessarily* be in the fund, or are, at least, so likely to be there that they may, for the purpose of exercising the taxing power, be considered as already in. Perhaps an example would be transfers or loans from the general fund, or advances from the revolving fund under section 43. The city, in contemplation of the availability of such moneys as a result of their transfer being ordered, may regard them as moneys which "may be" in the fund, and may take into consideration such specific, definite sums in computing the tax. There may be other situations in which specific sums are to be regarded as highly likely to be in the fund at the necessary time. But this cannot be said of the unpaid assessments due from taxpayers, which are neither definite in amount, nor, in the present case, likely to be collected. The so-called "presumption" has no foundation in fact, and is wholly improbable. The very fact that for some time delinquencies have increased and past due assessments have accumulated shows that there is little chance of a substantial amount thereof being paid up "before the proceeds of another tax levy" can be made available, that is, during the taxable year. All of the indications are that there will be additional delinquencies instead of the elimination of past delinquencies.

The foregoing discussion to the effect that the assessments must be cumulated is supported by the weight of available authority from other jurisdictions, as well as by strong expressions in our own decisions. The Acquisition and Improvement Act of 1925 was largely based upon the Road District Improvement Act of 1907 (Deering's Gen. Laws, 1931, Act 3276), and the enforcement provisions contain practically the same language. Section 26 of the latter statute requires the levy of a special assessment tax ''in an amount clearly sufficient, together with any moneys which are or may be in said fund, to pay all the principal which has become or will become due and all interest which has become or will become payable on said bonds, before the proceeds of another tax levy . . . can be available''. The same arrangement is provided for a temporary loan from the general fund pending the levy and collection of a tax, and it is similarly declared that ''in any event it shall be the duty'' of the taxing authority to levy a sufficient tax. This statute was before the court in *Municipal Imp. Co.* v. *Thompson,* 201 Cal. 629 [258 Pac. 955], and we held it valid against constitutional attack. One of the grounds of invalidity urged in that case was that under section 26 the property owner may not know the amount of the tax to be paid by him until the final installment on the bonds is due, ''because the tax on some of the lots in the district may become delinquent and *some of the land owners be required to pay an undue proportion* in order to make up a sufficient fund to pay said instalments''. (201 Cal. 636.) We said in answer to this objection that it was not essential to the validity of the statute that the property owner be advised in advance of the precise amount he will be required to pay each year, and that the duty to levy and collect sufficient funds to satisfy installments of principal and interest as they became due was mandatory. We added (201 Cal. 637): ''If some of the special assessment payments become delinquent from year to year it would not follow that the lands of the delinquent owners would be relieved from paying the charge. It would be merely postponed. With the penalties and costs accruing to the bond fund it is reasonable to assume that the burden is equalized during the period that the bonds are outstanding.'' In *County of San Diego* v. *Childs,* 217 Cal. 109 [17 Pac.

(2d) 734], this court held invalid the Refunding and Reassessment Act of 1931, which sought to refund the bonds of such districts as the one involved herein by substituting for the *ad valorem* tax on all the lands a specific lien on each parcel of land in the district, and the issuance of a new bond to represent such lien. In commenting upon the difference between the two systems, we said of the provisions of the Acquisition and Improvement Act of 1925 under which the bonds had already been issued (217 Cal. 115) : "The bondholder must look for payment from the special fund maintained by the annual assessments. If the fund becomes depleted and is insufficient to pay the interest or principal on the bonds *it is the duty of the board of supervisors to provide for the deficiency in the subsequent levy."* (Italics ours.) (See, also, *O. T. Johnson Corp.* v. *Los Angeles,* 128 Cal. App. 440 [17 Pac. (2d) 792] ; *Robinson* v. *Supervisors of Butte County,* 43 Cal. 353.)

The majority of the cases from other jurisdictions support the conclusion that a statutory duty to "levy and collect" taxes is not discharged by their mere levy, but requires that they be actually collected. These cases likewise declare that a mandatory duty to cumulate assessments exists in situations analogous to that presented in these cases. (See *Rountree* v. *State,* 102 Fla. 246 [135 So. 888] ; *Klemm* v. *Davenport,* 100 Fla. 627 [129 So. 904, 70 A. L. R. 156] ; *Norris* v. *Montezuma Valley Irr. Dist.,* 248 Fed. 369; *Gates* v. *Sweitzer,* 347 Ill. 353 [179 N. E. 837, 79 A. L. R. 1151] ; *In re Dancy Drainage Dist.,* 190 Wis. 327 [208 N. W. 479].)

We have been asked to consider the hardship which may result where the land owners who are not in default are forced to pay an additional tax to meet the deficiency caused by other defaulting taxpayers; and it has been urged that to cumulate the levies will result in the building up of a huge and unnecessary surplus fund in the event that ultimately the delinquencies are met by money from redemption or sales of the property. To each objection it must be answered that the legislature has expressed its intention in a manner sufficiently clear, and that this court is without the power to change the terms of that expressed intention. The evil complained of is, indeed, inescapable

in any system of *ad valorem* taxation. (See *In re Dancy Drainage Dist, supra; Burnett* v. *City of Grand Rapids,* 264 Mich. 593 [250 N. W. 320].) But it has been pointed out that there is good reason to believe that over the period of thirty years during which the bonds are to be retired, the temporary inequalities arising from cumulative assessments will be ironed out and equalized; that is, that by reason of revenue from redemptions and sales, the future tax levied will be decreased and the burden on the nondefaulting owner eased. (See *Municipal Imp. Co.* v. *Thompson, supra.*) As to any surplus money remaining in the fund after the bonds are retired, the act (sec. 41, subd. 7) provides that they are to be used for repairing public ways in the district, and thus they serve to meet the cost of improvements which the land owners would otherwise be forced to pay for by further taxes.

█ That respondents' arguments were properly addressed to the legislature would appear from the fact that the act under discussion was repealed in 1933 (Stats. 1933, chap. 346); but the enforcement of the bonds already issued is not and of course cannot be affected by the repeal.

█ Under the statute as we have interpreted it, the right to *mandamus* inevitably follows. The only effective remedy of unpaid bondholders in a case such as this is a writ of mandate, and to deny that remedy is practically to render the obligation unenforceable. (*State* v. *Lakeland,* (Fla.) [150 So. 508, 90 A. L. R. 704]; *Rountree* v. *State, supra.*)

It is therefore our conclusion that a peremptory writ of mandate should issue to compel the respondent city council to levy a special assessment tax upon all the lands in Acquisition and Improvement District No. 1 of the city of San Diego in an amount clearly sufficient, together with moneys which in some specific amount are or will necessarily be in the bond fund before another tax levy for municipal purposes can be made available, to pay all principal and interest now due, and which will become due before the proceeds of another tax levy made at the time of the next general tax levy for municipal or county purposes can be made available for such payment; such levy to be made at the time of the next general tax levy for

county or municipal purposes and for each succeeding year thereafter.

It is so ordered.

Rehearing denied.

Shenk, J., dissented.