HOUSER, J.
 

 From the record herein, the fact is disclosed that by the various provisions of article XXXIV which includes sections 500 to 513, inclusive, of the charter of the city of Los Angeles, a retirement system for specified classes of employees of said city was created. Therein, after provision had been made to the effect that the management and control of said system should be vested in and entrusted to a “Board of Administration”, and in connection with the duties of said board, that annually it should prepare a budget, which among other things, should show the financial necessities for the operation of the system for the ensuing year,—by the provisions of section 506 of the charter, relating to the method by which such moneys were proposed to be made available for the purpose of carrying out the manifest intent of the system, it was provided as follows:
 

 “For the purpose of providing funds to meet the budget for said City Employees’ Retirement Fund the Council or Controller shall annually levy, in addition to all other taxes levied by the City, a tax clearly sufficient to provide the total amount of all items in said budget; provided, however, that said City Council may appropriate from any available funds, all or any part of the total amount of all or any of the items in the budget for said City Employees’ Retirement Fund, in which event the tax levy to be made for said fund shall be clearly sufficient to provide the difference between the amount so appropriated and the total amount of all items in said budget.”
 

 In addition to such special provisions of the charter, by the terms of section 352 thereof, in substance the city council was required to adopt a general tax ordinance for each (fiscal) year not later than the “last day of August”. And by the terms of each of several different sections of the charter, the mayor of the city was authorized to exercise a veto
 
 *412
 
 upon such ordinance; subject, however, to “passage by the council over the mayor’s veto by a two-thirds vote”. It also appears that although in due course, and preceding “the last day of August”, 1937, the city council adopted an ordinance by the terms of which in effect a tax was levied for the purpose of providing funds for general and some special uses, no provision was made therein “for the purpose of providing funds to meet the budget for said city employees’ retirement fund”. Nor has any ordinance, either in substance or at all, to the latter effect, .ever been so adopted. Section 504 of the city charter includes a provision that ‘ ‘ In order that the system created by this Article may become operative as of the 1st day of July, 1937, the Controller is authorized and directed to loan to the retirement fund from the reserve fund such sums as may be required, such loan to be repaid by the retirement fund from the first available money therein”. And by the provisions of subdivision 10 of section 47 of the Charter of the City of Los Angeles, the controller is authorized to maintain ‘ each fund on a parity with its obligations at all times by transferring from the reserve fund as a loan to any fund which may become depleted through tardy receipt of revenues. He shall, in all cases, upon receipt of revenues sufficient to make such allocation as will restore each such fund to parity, retransfer the amount of such loan to the reserve fund.”
 

 In such circumstances, at the instance of one of the retired employees of the city of Los Angeles, who apparently was entitled to benefit by the terms of the said retirement plan, this court caused its alternative writ of mandate to issue, directed to the several respondents therein named, by which they were required generally to perform the various and respective acts thus specified, or on a designated date, that they show cause before this court why they had failed in that regard. The several respondents having answered herein, the matter is now ready for determination.
 

 One of the allegations that is contained within the petition for the issuance of the writ herein is that, “The principal and only question to be determined is whether or not it is the mandatory duty of the Council of the City of Los Angeles to provide funds to meet the costs of the items set forth in the budget adopted by the Board of Administration of said retirement system.”
 

 
 *413
 
 But in that connection it now appears that by each of the several parties that are affected by the proceeding, it is expressly conceded that with respect to the several requirements specified in section 506 of the charter, the duty of the city council either to levy a tax or to appropriate available funds “to meet the budget for said City Employees’ Retirement Fund”, is mandatory; also, that in accord with the provisions of the charter, as far as concerns the date before which the city council might have included such special tax levy, or the several items thereof, within the general tax ordinance to wit, “the last day of August” 1937, has long since expired; and that as a consequence of the existence of such latter situation, as far as it may or does relate to the specified date of August 31, 1937, no power may or can compel the obedience of the said city council to the plain mandate of the said charter provision. As far as concerns the controller, although in reliance upon the terms contained within section 506 of the charter, mandatory relief originally was prayed by the petitioner against that official of the city, by the express statements of the petitioner that are contained within his brief filed herein, particularly for the asserted reason that in accord with former adjudications by this court on analogous facts, that part of the charter provision is unconstitutional, his prayer with regard to the controller has been withdrawn;—notwithstanding which, although the several respondents do not admit the illegality of the charter provision in that particular, or that the controller ordinarily would not be legally qualified to act, for the asserted reason that by the provisions of sections 353 and 506 of the charter, the right of the controller to levy a tax becomes operative only when the city council has failed to make any levy “at all”,—and since the fact herein is' that the city council did make a levy (omitting therefrom the budget item of the city employees’ retirement fund) the respondent members of the city council concede the law to be that the controller is lacking in authority to make any levy at this time. In addition to the foregoing, all the respective parties are in accord one with the other to the effect, that as to the city council, not only is mandate a proper remedy to be invoked in the premises, but also that if such remedy be exercised herein,— the duty of the said respective respondents being a “continuing ’ ’ one, any order that may be made by this court with
 
 *414
 
 reference thereto may be made applicable not only as far as may concern future appropriations, but also future tax levies, to be made or ordered respectively by ordinance of the city council of the city of Los Angeles. And in that regard, the several rulings by this court with reference to that situation apparently support their position.
 
 {Union Safe Deposit Bank
 
 v.
 
 Menlo Park,
 
 3 Cal. (2d) 264, 266 [43 Pac. (2d) 811];
 
 American Securities Co.
 
 v.
 
 Forward,
 
 220 Cal. 566, 571, 572 [32 Pac. (2d) 343, 96 A. L. R 1268];
 
 Pasadena J. G. Dist.
 
 v.
 
 Board of Supervisors,
 
 216 Cal. 61 [13 Pac. (2d) 678].) So that, other than as may relate to the respondent members of the city council of the city of Los Angeles, acting as such, it does not appear that either of the remaining respondents has ever failed or refused to perform his official duty in the premises. Particularly is that true with reference to the duty of the mayor of said city. As hereinbefore has been stated, no tax ordinance that relates to the city employees’ retirement fund has ever been adopted by the city council; and as a consequence of such dereliction in duty, the mayor has had no opportunity either to approve or to reject any proposed legislation in connection with the plan to make money available for that fund. And the situation of the controller in the matter, if not identical with, at least is analogous to, that of the mayor. Other than the controller’s allegations that are contained in his answer herein to the effect that he is “informed and believes and therefore alleges that under the terms of section 353 and section 506 of the charter, it is his duty thereunder to proceed, as provided in said section 353, to make a supplemental tax levy for the purpose of raising the funds required by the City Employees’ Retirement System for the fiscal year 1937-1938, but that his power so to do has been denied by the other respondents herein and that unless ordered so to do by this Honorable Court he will not proceed to make such levy in the manner provided in said section 353 of the City Charter”; also, that “the City Controller has power to maintain the said City Employees’ Retirement Fund on a parity with its obligations by transferring from the Reserve Fund enough to meet the said obligations until such time as receipt of revenues is had sufficient to restore such fund to parity and permit of transfer of the amount of the loan to the Reserve Fund . . . —the record fails to disclose anything upon
 
 *415
 
 which a mandate of this court, by which the controller might be ordered to perform any duty in the premises, might properly be based. Neither in the petition for the writ, nor in the answer of either the mayor or the controller may any allegation be discovered which either unequivocally, or at all, states the essential fact that a demand heretofore has been made by a specified and properly authorized official or body of the city of Los Angeles that the mayor or the controller respectively perform either or any of the acts which, by the provisions of the charter he is charged with the duty to perform ; or in that regard, that he either has failed, neglected or refused to perform such act. In that connection, as hereinbefore has been set forth, the most that is disclosed is that which appears in the separate answer of the controller, to wit, that although by the express provisions of section 353 of the charter, on the failure of the city council to perform its duty, the controller is authorized “to make a supplemental tax for the purpose of raising the funds ... ”, the power to do so
 
 “has been denied by the other respondents”'.
 
 But nowhere within either the petition, or the answer of either of the several respondents, may be found any allegation that “the other respondents” are, or that either of them is, clothed with any authority in that regard. As far as is indicated by any pertinent charter provision to which the attention of this court has been directed, neither the mayor nor the city council has any greater right or authority than has any private citizen to “deny” or to prevent the performance of any authorized act of the controller, or in any manner to influence him with reference to his official act or acts as it or they may concern a mandate or direction by virtue of the provisions of the city charter as it or they may affect the city controller with relation either to a possible levy by him of a “supplemental tax”, or to his “power to maintain the city employees’ retirement fund on a parity with its obligations”. However, by the prayer attached to the answer of each of the several respondents, it appears that they are and each of them is desirous that this court render a decision wherein the several duties of each of the said different city officials may be not only clearly defined, but also that forthwith he be ordered to perform each of such duties. In the circumstances here presented, it is clear that this court should not comply with either or any of such suggestions.
 

 
 *416
 
 The only point that is now presented by the petitioner, and which is founded upon allegations that are supported by sufficient facts set forth in the petition, is whether, in consideration of the situation that hereinbefore has been outlined, the city council is now authorized
 
 to make
 
 an appropriation “for the purpose of providing funds to meet the budget for said city employees’ retirement fund” for the fiscal year 1937-1938, and if so, whether this court will order the city council to make the appropriation which it is asserted is contemplated by the provisions of section 506 of the city charter.
 

 To that end, it becomes advisable that the several pertinent provisions of the charter be examined. In that connection, it will at once appear that the provisions of section 506 of the charter furnish the foundation. Without herein quoting that section in full, it may suffice to state that the greater part thereof relates to the duties of the board of administration, particularly with reference to the time when it shall prepare and submit to the mayor and the controller a budget which shall include therein specified items of expense with respect to the estimated cost of maintaining the city employees’ retirement fund; following which is the provision hereinbefore set forth which relates to the method by which the money necessary for the maintenance of the fund is authorized to be provided. By reference thereto, it will be noted that for that purpose, the city council is directed to “annually levy, in addition to all other taxes levied by the city, a tax clearly sufficient to provide the total amount of all items in said budget ... ”. Concerning the date or the time within which the city council is thus restricted in its official act in the premises, although solely by the terms of section 506 of the charter, the city council is required to act
 
 “annually”
 
 only, the provisions of section 352 of the charter limits the date of such performance to “on or before the last day of August of each year”. So that in any event, as far as may concern the levying of a tax for the purpose of providing funds to meet the budget for the city employees’ retirement fund, it is clear that in the instant matter, the time limit fixed by the charter having expired, in the absence of qualifying charter provisions or other authority in the matter, and particularly in consideration of that which may be understood as the stipulation of the parties herein, it well may be that at this time this court is powerless to make an
 
 *417
 
 order by which the dereliction of the city council in that regard may be corrected. However, as hereinbefore has been set forth, by the terms of section 506 of the charter, in lieu of providing funds for the city employees’ retirement fund by including a required percentage within the general tax levy, the city council was authorized to adopt an alternative method, in that for the intended purpose it might “appropriate from any available funds, all or any part of the total amount of all or any of the items in the budget . . . ”. Had the charter provision stopped at the close of the language just quoted, and had no qualifying words appeared either in the section under consideration or elsewhere in the charter, it is conceivable that even though the time limit for adopting the annual general tax ordinance had expired, the language thus employed in said section possibly might have admitted of a construction by which the city council might have been empowered “after the last day of August” to appropriate funds to be used for the specific purpose of maintaining the city employees’ retirement system during the current year. But unfortunately as far as such a conclusion is concerned, not only in accord with a rule of construction, but also by other language that is contained in section 506 of the charter, it appears that in adopting the charter provisions, the intention of the electors of the city of Los Angeles was not to confer upon the city council the right to make such appropriation excepting at a time which preceded the date when the city council was required to adopt the general tax ordinance.
 

 It may be remembered that the authority of the city council to levy the necessary tax for the purpose of providing money for the fund is followed by a
 
 “provided, however”,
 
 which purports to authorize the city council to make an appropriation for the same purpose. In that connection, it is well established that in general, the purpose of a
 
 “proviso”
 
 in a statute, or in an ordinance, is to create merely an exception to the principal provision of the statute or ordinance which precedes such proviso; with the result that the principal part of the statute or ordinance thus modified remains intact excepting as it may be thus qualified. In other words, the proviso may, and usually does, limit the principal part of the statute or ordinance only as far as it expressly or impliedly purports to do so. In California Jurisprudence,
 
 *418
 
 volume 23, page 744, it is said that the office of a proviso “is to explain, qualify, or restrain the operation of a preceding provision”. And it is to “be read in the light of the subject-matter” of the act.
 
 (People
 
 v.
 
 Morrill,
 
 26 Cal. 336, 355.) Also, in
 
 Dufton
 
 v.
 
 Daniels,
 
 190 Cal. 577, 580 [213 Pac. 949], it is said, “The language of the section is plain and unambiguous, and it is not necessary to invoke the settled rule of construction that an exception contained in a statute to a general rule laid down therein is to be strictly construed (Black on Interpretation of Laws, p. 275; Lewis’ Sutherland on Statutory Construction, 2d ed., sec. 352). ...” And further, in the case of
 
 Forbes
 
 v.
 
 City of Los Angeles,
 
 101 Cal. App. 781, 788 [282 Pac. 528], it is said: “ ‘Where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reason thereof. ’
 
 (United States
 
 v.
 
 Dickson,
 
 40 U. S. [15 Pet.] 141 [10 L. Ed. 689].)” With that in mind, it becomes obvious that the proviso that occurs in section 506 of the charter with respect to the power of the city council simply to make an appropriation cannot adversely affect the time limit within which either the general tax levy may be provided by ordinance by the city council, or an appropriation may be made; and since in accord with other provisions of the charter the general tax levy must be made “before the last day of August”, it follows that the making of an appropriation is similarly limited. Attention is also directed to the clause in section 506 of the charter, to the effect that instead of providing for the raising of funds by taxation, the city council may appropriate either the whole or any part thereof “from any available funds; ... in which event (the making of an appropriation) the tax levy to be made for said fund shall be clearly sufficient to provide the difference between the amount so appropriated and the total amount of all items in said budget”.
 

 As hereinbefore has been indicated, in the matter of adopting an ordinance by which the annual general tax levy is made, the city council is required to act “on or before the last day of August”. In that regard, it is granted no exten
 
 *419
 
 sive or permissive leeway; and included within that ordinance (whenever adopted) must be either “the
 
 total amount
 
 of all items in said budget" for said city employees’ retirement fund, or “the
 
 difference
 
 between the amount (so) appropriated and the total amount of all items in said budget". Furthermore, concerning the limitation of time within which the city council is authorized to make an appropriation, and particularly in determining the meaning that should be attributed to section 506, the word
 
 “difference”,
 
 which is used in connection with the authority of the council, is significant. As used, it connotes that before the amount to be allowed for the city employees' retirement fund may be properly ascertained as an item to be considered in making the general tax levy, the amount of any appropriation which up to that, time may have been made by the city council must be deducted from the figures which shall have appeared in the budget that theretofore should have been prepared by the board of administration and transmitted by it to the mayor and the controller. In effect, that is to say that the or any appropriation for any given fiscal year must have been made
 
 before
 
 the general tax levy ordinance may be adopted. Furthermore, as is expressly declared within section 506 of the charter, one of the purposes of the general tax levy is to provide “funds to
 
 meet
 
 the budget". It will again be noted that the method b3which that result is proposed to be finally accomplished is by means of a general tax levy;
 
 “provided, however”,
 
 that it is within the power of the city council to reduce the amount of the total tax, or the percentage of the general tax levy, by officially ordering by its ordinance, that either the whole or any part of the amount which ordinarily would have to be included within the general tax levy, may be taken from “available funds" of the city and used “for the purpose of providing funds to meet the budget". But however the desired result may be accomplished, that is, either by means of taxation, or by the appropriation of available funds, or by both means, it is manifest, as in effect is declared by the provisions of section 506 of the charter, that if by tax only, the tax shall be “clearly sufficient to provide the
 
 total
 
 amount of all items in said budget"; and that “if the funds to meet the budget" have been only partly secured or made available b3 means of an appropriation, then the tax shall be based upon “the
 
 difference
 
 between the amount
 
 *420
 
 so appropriated and the total amount of all items in said budget”. It is obvious that if “before the last day of August” the city council is required to levy a general tax which must include an item that will provide for the total amount specified in the budget of the city employees’ retirement fund, less any appropriation that theretofore may have been made in support of that fund, the city council may properly do so only on the basis of previous knowledge on its part of facts that may be contained within, and conveyed to the city council by means of, said budget, together with like knowledge of the amount of money (if any) which theretofore may have been appropriated to the fund. Within the contemplation of the provisions of section 506 of the city charter the general tax levy is the final act for providing the funds necessary for the proper maintenance of that fund. Any tax that might be based upon either a greater or a lesser sum than that which would be so represented and calculated, clearly would be in violation of the express terms of the charter provision. And if proper in amount, as required by the charter provision, it is equally manifest that any appropriation in aid of the fund, that might be made after the last day of August, in effect would amount to double taxation. It thus appears that in adopting the charter, it must have been within -the legal contemplation and the intention of the electors that if the money that was necessary for the support of the fund had not theretofore been appropriated by the city council for that purpose, the required
 
 total
 
 amount would be provid°d by the levy of a general tax, and that the ordinance which would be adopted by the city council to that end would be its final act in the premises; and, as hereinbefore has been stated, when the general tax ordinance was adopted “on or before the last day of August”, and no provision having been made in said ordinance with respect to the fund that here is the subject of consideration, and since the powers of the city council are limited by the express or the implied terms of the charter provisions of the city, it follows that in the absence of any charter provisions other than those contained in section 506 thereof, by which the city council is authorized to appropriate funds “to meet the budget for said city employees’ retirement fund”, it now has no power to make an appropriation for that purpose as far as such an appropriation may directly
 
 *421
 
 affect the budget for that fund for the fiscal year 1937-1938. However, solely in that connection, such conclusion should not be understood as indicative of a ruling by this court that the city council is entirely lacking in authority to minister to the financial necessities of the city employees’ retirement fund. In that regard (although not to be accepted as anything more than a suggestion by this court) among other possible means of relieving an embarrassing situation, the attention of respective counsel is directed not only to the opening sentence, but also to subdivision 3, and the closing sentence of section 506 of the city charter, wherein it may appear that
 
 “annually”
 
 (apparently without express limitation as to the date thereof) thé board of administration shall prepare a budget for the apparent purpose of furnishing information to the city council to the end that it may levy a tax “clearly sufficient to provide the total amount of all items in said budget”; also, that at a time
 
 “before
 
 the last day of August” the city council is authorized to “appropriate from any available funds, all or any part of the total amount of all or any of the items in the budget for said city employees’ retirement fund”, which for the fiscal year 1938-1939 may include an item for “The amount of any deficit which may remain in said retirement fund in the event the appropriation of any previous year shall have proved insufficient to pay the demands drawn against said retirement fund.”
 

 As a result of the foregoing considerations, and especially in reliance upon the authority that is contained within the adjudicated cases hereinbefore cited, to wit,
 
 Union Safe Deposit Bank
 
 v.
 
 Menlo Park, supra; American Securities Go.
 
 v.
 
 Forward, supra; Pasadena J. G. District
 
 v.
 
 Board of Supervisors, supra,
 
 it is ordered that “before the last day of August”, 1938, each of the several individual respondents herein (other than Frank L. Shaw, as mayor of the city of Los Angeles), and Dan O. Hoye, as controller of the city of Los Angeles), acting each with the others in their official collective capacity as the city council of the city of Los Angeles, levy a general tax which, in addition to all other taxes levied by the city of Los Angeles, shall include a tax sufficient to provide the total amount of all items in the budget of the city employees’ retirement fund for the fiscal year 1938, which budget theretofore shall have been prepared and transmitted to the mayor
 
 *422
 
 and the controller of said city by the board of administration of the said city employees ’ retirement fund; or as an alternative thereof, that if before the last day of August, 1938, the said city council of the city of Los Angeles shall have appropriated from any available funds all or any part of the total of all or any of the items in the said budget for said city employees’ retirement fund,—in that event, it is ordered that before said last day of August, 1938, the said individual respondents, acting as aforesaid as said city council, shall levy a tax for said city employees’ retirement fund which shall be clearly sufficient to provide the difference between the amount so appropriated (if any)- and the total amount of all items in said budget.
 

 Shenk, J., Langdon, J., Waste, C. J., Seawell, J., and Edmonds, J., concurred.