CITY OF SERGEANT
BLUFF, Appellee,

v.

CHICAGO AND NORTH WESTERN
TRANSPORTATION COMPANY,
Appellant.

No. 85–705.

Supreme Court of Iowa.

March 19, 1986.

Rehearing Denied April 17, 1986.

**564**

Kevin M. Soule of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellant.

John D. Ackerman of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

CARTER, Justice.

The Chicago and North Western Transportation Company (the carrier) has been granted discretionary review of the district court's affirmance of findings of guilt on five simple misdemeanor citations under an ordinance of the city of Sergeant Bluff (the City). Each citation charged that the carrier blocked a grade crossing in the city for a longer period of time than permitted under a local ordinance. The primary contention of the carrier on this appeal and the only one which we consider is whether it was entitled to a judgment of acquittal because the alleged incidents were excepted from the proscription of the ordinance by a proviso which excludes delays necessary to comply with governmental safety regulations.

The ordinance under which the citations were issued provides:

It is unlawful for any railroad corporation or its employees to operate any train in such a manner as to prevent vehicular use of any highway, street or alley for a period of time in excess of five minutes except:

1. When necessary to comply with signals affecting the safety of the movement of trains;
2. When necessary to avoid striking any object or person on the track;
3. When the train is disabled;
4. When necessary to comply with governmental safety regulations.

The City, through its police officers, issued nineteen citations against the carrier for alleged violations of this ordinance between May 10, 1984, and August 11, 1984.

On September 10, 1984, a twelve-hour trial on all nineteen charges was conducted before a district associate judge. The evidence indicated that all nineteen citations involved coal trains the average length of which varied between 100 and 110 cars (1 to 1.14 miles). Representatives of the carrier testified that it is not economically feasible to make up its coal trains in shorter lengths.[1]

---

1. The carrier contended in the district court and urges on this appeal that, if the consequences of applying the ordinance forces a reduction in the length of these interstate coal shipments, the ordinance constitutes an unreasonable restraint on interstate commerce in violation of the commerce clause of the federal constitution as construed in *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). One of the factual predicates for this argument

At the close of the evidence, the district associate judge found the carrier guilty of ten of the citations and not guilty with respect to the other nine. The carrier appealed six of the ten judgments of guilty to a district court judge as permitted by Iowa Rule of Criminal Procedure 54. The district judge affirmed the findings of guilty in five cases and ordered judgment of acquittal in one case.[2]

Each of the trains involved in the original nineteen citations was delivering coal consigned to the Iowa Public Service electrical generating plant located approximately eight miles from Sergeant Bluff. Delivery to the consignee required the train to traverse the single mainline track of the carrier passing through Sergeant Bluff and then switch onto a spur track traversing 7.7 miles to the plant destination. It is conceded by the City that regulations of both the state of Iowa and the federal railway administration impose a maximum speed limit of ten miles per hour for coal trains traveling on the IPS spur track. It is also conceded that, in order to enter the spur track at a legal speed, a train of 100 to 110 coal cars cannot be traveling at a speed greater than ten miles per hour at any time after it enters the city limits. Considering the length of the trains involved in the nineteen citations, compliance with the speed limit on the IPS spur required each train to block at least four grade crossings within the city for a period longer than five minutes.

The carrier argues that the speed limit on the spur track is a "governmental safety regulation" under subparagraph (4) of the ordinance which excused its noncompliance with the five-minute limit on blocking crossings. Our disposition of this contention is simplified somewhat by the City's concession that this is a correct interpretation of subparagraph (4). Notwithstanding this concession, however, the City urges that the carrier was guilty on each of the five ordinance violations involved in this appeal because in each instance the crossings were blocked for a longer period of time than was required to permit compliance with the speed limit on the spur track. Stated somewhat differently, the City's position on appeal is that, based on the facts of the five citations, the subparagraph (4) proviso enlarges the time limit for blocking crossings from five minutes to approximately six minutes and fifty seconds, but does not completely negate the proscriptive force of the ordinance.[3] The time of six minutes and fifty seconds is the average length of time which would be required for trains of the lengths involved in the present case to pass by the four grade crossings in the city while traveling at ten miles per hour. The actual blocking times involved in the five citations were six minutes and fifty-five seconds, seven minutes and five seconds, seven minutes and forty seconds, nine minutes and fifteen seconds, and nine minutes and thirty-five seconds.

The issue over which the parties clash in interpreting the ordinance is whether there is any proscriptive vitality remaining in the ordinance in situations which fall under subparagraph (4). The carrier maintains that the answer is no. The City maintains

has been established in that it appears without dispute that these shipments originated in Wyoming and passed in interstate commerce to their Iowa destination. We do not reach the carrier's constitutional argument, however, because the City does not urge that the carrier could have met the requirements of the ordinance through use of shorter trains. The City concedes that coal trains of the lengths involved in the present case are excused from the five-minute limitation provided in the ordinance.

2. The City has appealed from the ruling of the district judge in the latter case. Our separate opinion on that appeal is also filed this date as *City of Sergeant Bluff v. Chicago and North*

*Western Transportation Co.,* 383 N.W.2d 561 (Iowa 1986).

3. The City claimed in oral argument that this was the interpretation applied by local officials in enforcing the ordinance against the carrier. Apparently this has not always been the case because several of the citations upon which the district associate judge found the carrier to be not guilty alleged times which were less than those which the City concedes were minimally required in order to permit the carrier to comply with the speed regulations on the IPS spur track.

that the proscriptive force of the ordinance is flexible, and it may be applied to proscribe any blocking of crossings for periods of time longer than necessary to comply with the speed limit on the IPS spur. The City argues that the carrier's interpretation would render local officials powerless to prevent unreasonably long blockings of crossings by the carrier which extend well beyond the time required by the speed limits on the IPS spur. The carrier's response to this contention is that we must apply the ordinance as written and may not extend its application to situations not encompassed within its terms.

 Ordinances such as those involved in the present dispute should be reasonably specific concerning the conduct which is prohibited. *City of Cedar Falls v. Flett,* 330 N.W.2d 251, 256 (Iowa 1983); *Edwards & Browne Coal Co. v. City of Sioux City,* 213 Iowa 1027, 1036–38, 240 N.W. 711, 715–16 (1932). The purpose of a proviso in a municipal ordinance is ordinarily to restrain the operation of its preceding provisions. 62 C.J.S. *Municipal Corporations* § 442, at 851 (1949); *McAlpine v. Baumgartner,* 10 Cal.2d 409, 417, 74 P.2d 753, 757 (1937). When this principle of interpretation is applied to the ordinance under consideration, we believe they favor the carrier's contentions. The main body of the ordinance defines that which it is unlawful for the carrier to do, *i.e.,* block the use of highways, streets, or alleys in the city "in excess of five minutes." The effect of the proviso is to excuse noncompliance with the ordinance when the conditions of the proviso are found to exist. The language of the ordinance does not permit an alternative finding of guilt for taking longer than necessary to comply with governmental safety regulations.

Wholly apart from the foregoing rules of interpretation, we believe severe practical problems would arise if we were to adopt the City's interpretation of the ordinance. To do so would place the city in the position of having to enforce the ordinance almost entirely by resort to the applicability of its exceptions rather than its basic provisions.

This approach would be fraught with problems in the allocation of the burden of proof in the trial of alleged ordinance violations. *See State v. Wilt,* 333 N.W.2d 457, 461–63 (Iowa 1983).

We hold the carrier entitled to acquittal on all five citations because the alleged incidents were excepted from the proscriptive force of the ordinance. The judgment is reversed.

REVERSED.