TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------------------------
                                    :
        OPINION                     :   No.  87-502
                                    :
JOHN K. VAN DE KAMP                 :   MARCH 30, 1988
  Attorney General                  :
                                    :
RONALD M. WEISKOPF                  :
  Deputy Attorney General           :
                                    :
-----------------------------------------------------------------


        THE HONORABLE DENNIS A. BARLOW, County Counsel of Yuba County has requested an opinion on the following question:

        May a non-profit hospital which had earned surplus revenue in excess of ten percent during the preceding fiscal year still qualify for the "welfare exemption" from taxation under section 214 of the Revenue and Taxation Code?

CONCLUSION

        A non-profit hospital which had earned surplus revenue in excess of ten percent during the preceding fiscal year might still qualify for the "welfare exemption" from taxation under section 214 of the Revenue and Taxation Code.

ANALYSIS

        Pursuant to section 1 of article XIII of the California Constitution and section 201 of the Revenue and Taxation Code, all property in California is declared taxable, unless it is exempt under federal or California law.  Subsequent sections of Article XIII set forth various exemptions from taxation for particular types of property; some are self-executing, others not.  (Sutter Hospital v. City of Sacramento (1952) 39 Cal.2d 33, 35.)  One of the latter, section 4, provides that the Legislature may exempt from property taxation, in whole or in part, "(b) [p]roperty used exclusively for religious, hospital, or charitable purposes and owned or held in trust by corporations or other entities (1) that are organized and operating for those purposes, (2) that are nonprofit, and (3) no part of whose net earnings inures to the benefit of any private shareholder or individual." (Cal. Const., art. XIII, § 4(b).)

Pursuant to that authority the Legislature has enacted section 214 of the Revenue and Taxation Code. It currently provides in pertinent part that:

"(a) Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit; provided, that in the case of hospitals, such organizations shall not be deemed to be organized or operated for profit, if during the immediate preceding fiscal year the excess of operating revenues, exclusive of gifts, endowments and grants-in-aid, over operating expenses shall not have exceeded a sum equivalent to 10 percent of such operating expenses. As used herein, operating expenses shall include depreciation based on cost of replacement and amortization of, and interest on, indebtedness."

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual.

"(3) The property is used for the actual operation of the exempt activity, and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose." (Emphasis added.)

The exemption from taxation provided by section 214 is known as "the welfare exemption." (§ 214.) We are asked whether a hospital, whose operating revenues did exceed operating expenses by more than 10 percent in the immediate preceding fiscal year, can be eligible to qualify for it under section 214. We conclude that such a hospital could still be eligible for the welfare exemption if it can show that despite the surplus it is nevertheless "not organized and operated for profit."

In resolving this question our primary consideration is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645.) In determining such intent, we turn first to the words of the statute to give it effect according to the usual, ordinary import of the language used in framing it. (People v. Craft (1986) 41 Cal.3d 554, 560; People v. Belleci (1979) 24 Cal.3d 879, 884; Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230; People v. Knowles (1950) 35 Cal.2d 175, 182; Rich v. State Board of Optometry (1965) 235 Cal.App.2d 591, 604.) We therefore return to subdivision (a) of section 214 to consider its terms.

Looking at the subdivision, we see it provides the welfare exemption for:

"(a) Property used exclusively for hospital purposes if

"(1) the owner is not organized or operated for profit; <u>provided</u>,

          that in the case of hospitals, such organization shall not be deemed to be organized or operated for profit, if they <u>did not have</u> a ten percent excess of operating revenues over operating expenses during the preceding fiscal year."  (Emphasis added.)

Under subsection (a)(1) of the subdivision then, a condition for hospital property being exempt from taxation is that the owner not be organized or operated for profit.  But the condition itself contains a proviso, which relates to hospitals, and states that they "shall not be deemed" to be organized or operated for profit if they did not have surplus revenues over expenses in the preceding year in excess of 10 percent.

The function of a proviso is to qualify what appears before it and to limit any authority found therein by its parameters.  In other words, a proviso tells us that some modification is coming, for it acts as a limitation upon the main part of the act and deprives it of all effect inconsistent with its terms.  (<u>Livermore</u> v. <u>Waite</u> (1894) 102 Cal. 113, 121; accord., <u>McAlpine</u> v. <u>Baumgartner</u> (1937) 10 Cal.2d 409, 417-418.)  Here the clause that is affected is the condition of section (a)(1) that an organization not be organized or operated for profit, and the proviso which follows states that certain hospital organizations, i.e., those whose surplus operating revenues over operating expenses are less than ten percent, are not to be deemed so.

Paraphrasing the proviso, if the hospital's revenues did not exceed expenses by ten percent for the fiscal year it would not be "deemed to be organized and operated for profit" within the meaning of section 214(a)(1).  But the proviso is cast with a double negative--if revenues did not exceed, the hospital shall <u>not</u> be deemed--and the question arises as to what the proviso does mean for a hospital organization which <u>did</u> have a ten percent surplus of operating revenues over operating expenses.  Does the double negative make a positive; in other words is the converse of the proviso to be implied, so as to mean that if a hospital did have the ten percent surplus then it <u>is</u> to be deemed to be organized and operated for profit and thus not eligible for the welfare exemption because it would not be able fulfill the basic condition of subsection (a)(1)?  Or is the proviso simply inapplicable to the situation, which it does not address on its face, and thus leave the hospital's exemption to be judged under the first part of subsection (a)(1) without reference to the proviso. We believe the latter reflects the Legislature's intention.

It is fundamental to statutory construction that one must assume that the Legislature meant what it said and that words are not to be added or implied to a statute under the guise of interpretation.  (<u>Tracy</u> v. <u>Municipal Court</u> (1978) 22 Cal.3d 760, 764; <u>Vallerga</u> v. <u>Dept. Alcoholic Bev. Control</u> (1959) 53 Cal.App.2d 313, 318; <u>Kirkwood</u> v. <u>Bank of America</u> (1954) 43 Cal.2d 333, 341; <u>Rich</u> v. <u>Board of Optometry</u> (1965) 235 Cal.App.2d 591, 604.)  Particularly, we are not to ascertain the true intent and meaning of a statute by a "tortured construction or by implying hidden meanings."  (<u>Madrid</u> v. <u>Justice Court</u> (1975) 52 Cal.App.3d 819, 824.)

Here the Legislature did not enact a statute which automatically excluded nonprofit hospitals earning more than ten percent surplus revenues from the welfare exemption from property taxation. Other sections of the Revenue and Taxation Code indicate that when the Legislature wished to exclude certain entities from an exemption from taxation, it has clearly done so. (See e.g., § 201.2(c) ["This section shall not be construed to exempt any . . . ."].) That it did not do so here is an indication that such was not its intention. (Cf. Safer v. Superior Court (1975) 15 Cal.3d 230, 237-238; Kaiser Steel Corp. v. County of Solano (1979) 90 Cal.App.3d 662, 667; Board of Trustees v. Judge (1975) 50 Cal.App.3d 920, 927.)

We realize that "constitutional and statutory provisions granting exemption from taxation are to be strictly construed to the end that such concession will not be enlarged or extended beyond the plain meaning of the language employed. [Citations.]" (Christ The Good Shepherd Lutheran Church v. Mathiesen (1978) 81 Cal.App.3d 355, 361.) But we are also told that "'the rule of strict construction does not require that the narrowest possible meaning be given to the words descriptive of [an] exemption, for a fair and reasonable interpretation must be made of all laws with due regard for the ordinary meaning of the language employed and the object sought to be accomplished thereby. Strict construction must still be reasonable construction.' [Citation.]." (Ibid.)

We construe subsection(a)(1) in section 214 to create a rebuttable presumption that a hospital is not organized or operated for profit if the owner establishes that the hospital did not have operating revenues which exceeded operating expenses by ten percent or more during the preceding fiscal year. This statutory presumption would be rebutted by establishing that the hospital was organized or operated for profit, e.g., by showing that its articles of incorporation provide for the payment of profits to shareholders as dividends or that earnings were actually paid to stockholders (though the earnings were less than ten percent of expenses). In the examples referred to the hospital would not meet the constitutional requirements that the hospital be owned for purposes that are nonprofit and that no part of the hospital's net earnings inures to the benefit of any private shareholder.

We may turn to the legislative history of section 214 and the external and historical facts and conditions which lead to its enactment in its present form to confirm the Legislature's intention. (Sands v. Superior Court (34 Cal.3d 567, 570; Rich v. State Board of Optometry, supra, 235 Cal.App.2d at 604; People v. Ventura Refining Co. (1928) 204 Cal. 286, 291; Grannis v. Superior Court (1905) 146 Cal. 245, 247-248; Steilberg v. Lackner (1977) 69 Cal.App.3d 780, 785; 65 Ops.Cal.Atty.Gen. 32, 35 (1982).) There we see that the proviso in question came into being as part of legislation that was designed to help hospitals and not hinder them. More particularly, it was brought into section 214 as part of a general amendment that was made to the section to overturn a decision of the Supreme Court which had denied the welfare exemption to a hospital because it had generated profits.

As originally enacted in 1945, the welfare exemption of section 214 did not contain the proviso found in subsection (a)(1), and the condition stated by subsection (a)(3) was different

from that which appears today. The latter provided that to qualify for the welfare exemption, "property [could] not be used or operated by the owner . . . for profit regardless of the purposes to which the profit is devoted." (Stats. 1945, ch. 241, p. 706, § 1.)[1]

In Sutter Hospital v. City of Sacramento, supra, 39 Cal.2d 33, 40, our Supreme Court was asked whether a nonprofit hospital which had earned a surplus of revenues over expenses could qualify for the welfare exemption. The hospital had experienced an 8 percent surplus of income over expenses, which was to be used for debt retirement and an expansion of physical facilities. The taxing city contended that the surplus, no matter what its use, was violative of the statutory condition relating to the generation of a profit, and it disqualified the hospital for the welfare exemption.

The court agreed with the city and held that the hospital did not qualify for the exemption because it operated its property for "the admitted purpose of producing a profit in the sense that the operation was one deliberately designed to produce income in excess of all operating costs." (Sutter Hospital v. City of Sacramento, supra, at 40.) This production of "net earnings," said the court, flew squarely in face of subsection (a)(3) which required that nonexempt property "not be used or operated . . . for profit regardless of the purposes to which the profit is devoted." (Id. at 40-41, cf., id. at 39.)

_____

[1]As originally enacted section 214 read as follows:

"Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation if:

"(1) The owner is not organized or operated for profit;

"(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual;

"(3) The property is not used or operated by the owner or by any other person for profit regardless of the purposes to which the profit is devoted;

". . . . . . . . . . . . . . . . . . . . . . .

"The exemption provided for herein shall be known as the 'welfare exemption.' This exemption shall be in addition to any other exemption now provided by law . . . ." (Stats. 1945, ch. 241, p. 706, § 1.) (Emphasis added.)

The court in <u>Sutter Hospital</u> thus based its decision solely on an interpretation of the third condition as was then set forth in subsection (a)(3) section 214.  Indeed, the court took pains to state that:

"If sub[section] three had been omitted, it might well be argued that the Legislature intended that the nonprofit conditions of sub[section] one would be satisfied so long as none of the 'net earnings' inured to the benefit of any private individual.  But sub[section] three cannot be declared to have been inserted without reason, and it seems clear that it was intended thereby to broaden the profit concept so as to deny exemption whenever the property is operated for the purpose of profit 'regardless of the purposes to which the profit is devoted.'"  (39 Cal.2d at 39.)

The court acknowledged that its holding created a major burden for modern hospitals to adhere to sound financial practices to produce net earnings, in order to reduce their indebtedness and improve their facilities, but said that matter should be addressed to the Legislature and not to the courts because "the present form of the statute compels the conclusion that [the] exemption must be denied [under subdivision (3)]."  (<u>Id.</u> at 40-41; cf., <u>id.</u> at 36.)

The Legislature promptly responded to the decision by amending section 214.  (Stats. 1953, ch. 730, § 1, p. 1994; <u>Christ The Good Shepherd Lutheran Church</u> v. <u>Mathiesen</u>, <u>supra</u>, 81 Cal.App.3d at 365; <u>Greek Theater Assn.</u> v. <u>County of Los Angeles</u> (1978) 76 Cal.App.3d at 781-782; 23 Ops.Cal.Atty.Gen. 136, 136, <u>supra</u>.)  It was in the context of the amendment that the proviso found its way into subsection (a)(1).

The amendment did the following:

(a)     It left unchanged the introductory clause of subsection (1), but added the proviso that hospitals earning less than the 10 percent surplus not be deemed to be organized and operated for profit;

(b)     it left unchanged all of subsection (2); and

(c)     it removed from the wording "regardless of the purposes to which the profit is devoted" from subsection (3), and thereby eliminated the language upon which the court in <u>Sutter Hospital</u> denied the welfare exemption because of a generation of profits.  Instead, the Legislature reworded the subsection to only require that property be "used for the actual operation of the exempt activity."  (Stats. 1953, ch. 730, <u>supra</u>.)[2]

---

[2]Such phraseology is as appears at the commencement of subsection (3) today.  Its second part, that the "property does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose" was added in 1968.  (Stats. 1968, ch. 645, p. 1327, § 1.)

By amending section 214, the Legislature thus rejected the notion that an otherwise exempt activity is not able to generate a profit and still qualify for the welfare exemption. (Stats. 1953, ch. 730, p. 1995, § 4; Christ The Good Shepherd Lutheran Church v. Mathiesen, supra, 81 Cal.App.3d at 365; 23 Ops.Cal.Atty.Gen. 136, 139, supra.) Indeed, in the urgency clause of the legislation, the Legislature made it clear that it never intended that the welfare exemption be denied if profits are generated and for example, "the income from the actual operation of the property for the exempt activity be devoted to debt retirement, expansion of plant and facilities or reserve for continuing contingencies. . . ." (Stats. 1953, ch. 730, § 4.)[3] Rather, otherwise exempt organizations could rightfully use income from their property for those purposes. (Ibid.) Under that formulation, there is no limitation on the amount of profit which can be derived from an exempt activity as long as they are devoted to proper uses.

Since section 214 was amended, the courts have consistently upheld the Legislature's intent that a nonprofit organization may generate surplus revenues and still qualify for the welfare exemption. (See e.g., Sarah Dix Hamlin School v. City and County of San Francisco (1963) 221 Cal.App.2d 236, 241 [private school]; San Francisco Boys' Club, Inc. v. County of Mendocino, supra, 254 Cal.App.2d 548, 552, 559; St. Francis Hosp. v. City & County of S.F. (1963) 137 Cal.App.2d 321, 327; Santa Catalina Island Conservancy v. County of Los Angeles (1981) 126 Cal.App.3d 221, 243; Christ The Good Shepherd Lutheran Church v. Mathiesen, supra, 81

---

[3]The urgency clause stated:

"This Act is an urgency measure necessary for the immediate preservation of the public peace, health or safety . . . and shall go into immediate effect. . . .

[A] decision of the State Supreme Court involving the tax exemption of a hospital . . . has caused the postponement or actual abandonment of plans for urgently needed hospital construction and expansion at a time when there are insufficient hospital facilities in this state . . . . This Legislature has recognized that in addition to gifts and bequests the traditional method for financing of the expansion and construction of voluntary religious and community non-profit hospital facilities is through the use of receipts from the actual operating facilities. . . .

"It has never been the intention of the Legislature that the property of nonprofit religious, hospital or charitable organizations otherwise qualifying for the welfare exemption should be denied exemption if the income from the actual operation of the property for the exempt activity be devoted to the purposes of debt retirement, expansion of plant and facilities or reserve for operating contingencies." (Stats. 1953, ch. 730, p. 1995, § 4.)

Cal.App.3d at 366.) A test for determining eligibility for the welfare exemption is how income from an otherwise exempt property is used, and not how much income is generated.

It is fundamental that "the various parts of a statutory enactment must be harmonized by considering [a] particular clause or section in the context of the statutory framework as a whole." (People v. Black (1982) 32 Cal.3d 1, 5; accord, People v. Craft (1986) 41 Cal.3d 554, 560.) The ten percent proviso was enacted at the same time that the Legislature amended section 214 to "clarify and remove any doubt" that organizations could rightfully make a profit from property devoted to exempt purposes without losing their tax exempt status.

We interpret the proviso in that light and we therefore view it as an additional protection for nonprofit hospitals in the face of the Sutter decision rather than the exclusive means by which they can qualify for the welfare exemption. In other words the proviso was never meant to prevent a non-profit hospital that did earn surplus revenue in excess of ten percent during the immediate fiscal year from still qualifying for the "welfare exemption" under the general provision of section 214 subsection (a)(1). Any other construction of the ten percent proviso would penalize such hospitals from using their profits for permitted activities, and would be inconsistent with the evident purposes of the legislation as a whole. (Cf., California Mfgrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844; Moyer v. Workmen's Comp. Appeals Bd., supra, 10 Cal.3d 222, 230.)

Accordingly we conclude that a non-profit hospital which earned surplus revenue in excess of ten percent during the immediate fiscal year may still be eligible to qualify for the welfare exemption from taxation under section 214 of the Revenue and Taxation Code.

* * * * *