[L.A. No. 28441. In Bank. Jan. 11, 1966.]

BOARD OF EDUCATION OF THE CITY OF LOS ANGELES et al., Petitioners, v. PHILIP E. WATSON, as Assessor, etc., Respondent.

Jerry F. Halverson for Petitioners.

Roger Arnebergh, City Attorney, Bourke Jones and James A. Doherty, Assistant City Attorneys, as Amici Curiae on behalf of Petitioners.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Respondent.

MOSK, J.—This proceeding in mandate involves the constitutionality of section 20811 of the Education Code. Petitioners, the governing boards of several public school districts in Los Angeles County (hereinafter called the districts), seek a writ of mandate to compel the Assessor of Los Angeles County to provide them, by May 15, 1965, with information as to the value of tax-assessed property in their respective districts, assessed by him for the 1965-66 fiscal year together with the estimated assessed valuation of taxable property appearing on the secured roll, the unsecured

roll, and solvent credits. Section 20811 of the Education Code requires him to provide this information, but he has refused to do so, contending that the section is unconstitutional and that it is impossible for him to comply with it.

Section 20811 provides in pertinent part: ''(a) This section shall apply only to those counties having a population in excess of 4,000,000 and to every school district within such a county for which the Board of Supervisors fixes the annual school district tax rate. . . . (b) Upon written request of the governing board of any school district submitted to the county assessor on or before the 20th day of February, the county assessor shall not later than the succeeding 15th day of May advise in writing the governing board of the school district the estimated total assessed valuation of taxable property in the district for the next succeeding fiscal year, together with the estimated total assessed valuation of all taxable property appearing on the secured roll, the unsecured roll, and solvent credits.''[1]

The districts allege that, before February 20, 1965, they requested the assessor to provide them with the information called for by section 20811 but that the assessor refused to comply with their request and will continue to do so since he maintains that, because the section limits its operation to school districts in counties with a population exceeding 4,000,000 it constitutes special legislation in violation of the Tenth, Twenty-eighth and Thirty-third clauses of section 25 of article IV of the California Constitution.[2]

Although the time for performance by the assessor of the duties prescribed by section 20811 has long since expired for the 1965-66 fiscal year, the basic issues presented are not moot because the obligation to provide the information set forth in the section recurs annually. (*Union Safe Deposit Bank* v. *City of Menlo Park* (1935) 3 Cal.2d 264, 266 [43 P.2d 811, 45 P.2d 347]; *American Securities Co.* v. *Forward* (1934) 220 Cal. 566, 571-572 [32 P.2d 343, 96 A.L.R. 1268].)

It should be noted at the outset that the parties are in

[1]Section 20811 contains a third subdivision, not involved in this proceeding, which was operative only until July 1, 1965.

[2]Section 25 of article IV of the California Constitution provides in part: ''The Legislature shall not pass local or special laws in any of the following enumerated cases. . . . Tenth—For the assessment or collection of taxes. . . . Twenty-eighth— . . . prescribing the powers and duties of officers in counties. . . . Thirty-third—In all other cases where a general law can be made applicable.''

agreement as to the fundamentals by which the constitutionality of section 20811 is to be determined and that their disagreement relates only to the applicability of the rules to the circumstances of the present case. A summary of the relevant principles appears in *Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 232 [157 P.2d 639, 175 A.L.R. 1109], which establishes that, while a legislative classification is improper if it is not founded upon some natural, constitutional or intrinsic distinction which reasonably justifies a difference in treatment, a classification which has a substantial relation to a legitimate object to be accomplished is valid. If any state of facts can reasonably be conceived which would sustain a statutory classification, there is a presumption that this state of facts exists and the burden of demonstrating arbitrariness rests upon the party who assails the classification. The Legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident. We pause also to note, in the disposition of this case, the conclusion reached in *Matter of Petition of Burke* (1911) 160 Cal. 300, 303 [116 P. 755], that the mere fact a class to which a statute applies consists of only one unit or entity does not render the enactment invalid. Thus, although Los Angeles is the only county in the state to which section 20811 applies (Gov. Code, § 28020), this is not a ground for condemning the act as special legislation in violation of the Constitution.

Under the foregoing principles, legislation classifying governmental entities on the basis of population has been upheld where the size of the population bore a reasonable relation to the purposes of the statute. (*Great Lakes Properties, Inc.* v. *City of Rolling Hills Estates* (1964) 225 Cal. App.2d 525, 533-534 [37 Cal.Rptr. 448]; *Sacramento Municipal Util. Dist.* v. *Spink* (1956) 145 Cal.App.2d 568, 572-573 [303 P.2d 46].) On the other hand, where the population of the class designated in the statute did not factually justify distinguishing treatment, such legislation has been held invalid. (*Consolidated Printing & Pub. Co.* v. *Allen* (1941) 18 Cal.2d 63, 70-71 [112 P.2d 884].)

According to the districts, the purpose of section 20811 is to permit them to adopt annual budgets which will be at or near the maximum permitted by law. They reason as follows:

the Education Code prescribes a maximum tax rate for school districts (Ed. Code, § 20751), and it requires that a district's budget for the ensuing fiscal year must be submitted to the county superintendent of schools by July 1 (Ed. Code, § 20601). If the districts are to prepare a budget which will utilize as much money as the maximum tax rate will permit, it is necessary for them to know, by May 15 of each year, the approximate assessed valuation of property for the following fiscal year, and without the aid of section 20811 they would not. have reliable estimates of these figures until after their budgets have been prepared. The time lag between the date of the preparation of a district's budget for a particular year and the ascertainment of the assessed valuation of property for that year compels the districts, in computing their budgets, to make valuation estimates for the succeeding fiscal year at their own risk and, in order to assure that the maximum tax rate will not be exceeded, they make conservative estimates of the tax base. For example, the budget of the school districts governed by the Board of Education of the City of Los Angeles for the 1964-65 fiscal year called for a tax rate which turned out to be significantly below the maximum permitted by law. The underestimation of available funds results in a curtailment of a school district's educational program, a consequence which it is asserted will be avoided if the assessor is required to provide the information specified in section 20811.

In support of their claim that availability of information as to the probable financial resources for the succeeding fiscal year is more essential for school districts located in Los Angeles County than for those located in other counties, the districts allege: one of the petitioners, the Board of Education of the City of Los Angeles, governs school districts with a combined student enrollment in excess of 765,000, housed in over 594 separate schools, and employing over 58,000 persons. The total budget required to plan and finance the educational program for these students is over $500,000,000. The annual increase in student enrollment in these districts is expected to be in excess of 25,000 students, requiring the employment of over 1,000 new teachers and other personnel annually. In order to contract for the employment of these persons and to mount the most effective educational program, the board must know, prior to the end of the school year, how much money it will have available. The sheer practical problem of assembling a budget of this size, involving many educational

programs for hundreds of thousands of students, tens of thousands of employees, and hundreds of school plants, requires that budget planning start long before the close of the school year. For the 1964-65 fiscal year, the city was forced to maintain over 30,000 students on half-day or double sessions.

The allegations continue: the same problems to a lesser degree confront the county's other districts, which are affected by the large size of the county and the continuing influx of population. The increase in urbanization has resulted in internal transiency throughout the districts, and there has been a large increase in educationally deprived students, many of them from states which have not provided the same level of educational services as the districts in Los Angeles County. These districts must plan, create, and establish new kinds of educational programs to meet the needs of such students, including relatively large-scale efforts to mitigate the effects of poverty on the education of minority groups.

The problems outlined, it is asserted, face school districts in Los Angeles County in far greater degree and variety than school districts in other counties and require more accurate planning for the use of the available tax dollar. An indication of the importance to the districts of the information requested of the assessor is that a one-cent raise in the tax rate of the districts governed by the Board of Education of the City of Los Angeles will result in over $600,000 of tax income, assuming 100 percent collections.

In reply to these allegations, the assessor contends that the classification made by the section is purely arbitrary and that there is no natural, intrinsic, or constitutional basis for distinction between school districts in Los Angeles County (or between counties the population of which exceeds 4,000,000) and other counties, to justify the imposition of the special duties imposed upon him by section 20811. He further asserts that budget planning problems in Los Angeles County do not differ from those in other counties and that there is no reliable evidence to sustain the claim by the districts that students enrolled in Los Angeles County schools require the special programs described in the petition to a greater extent than students in other counties. While it is possibly true, states the assessor, that the problems set forth in the petition face large school districts to a greater degree than small districts, section 20811 applies to the smallest district in Los

Angeles County and excludes the largest district elsewhere. Indeed, he argues, the size and wealth of a large school district such as that governed by the Board of Education of the City of Los Angeles renders it possible for it to employ specialized personnel with the skill to prepare its budget without the aid of the assessor, whereas smaller districts are not in a favorable position in this respect.

■ Although the issue is not free from doubt, we resolve the conflict, as we must, in favor of finding that the Legislature adopted a valid act and that section 20811 is constitutional since there exists a rational basis for the statutory classification. The Legislature could have reasonably assumed that school districts containing a larger number of students warranted special consideration and that in a county with a population of over 4,000,000 persons, the districts have more students than in smaller counties. Figures issued by the State Department of Education bear out this assumption and demonstrate that individual school districts in Los Angeles County have, for the most part, larger numbers of students than do the districts in other counties. The chart in the appendix, based upon figures taken from the publication California Education (Vol. 2, No. 9, May 1965, p. 28), issued by the State Department of Education, indicates that in Los Angeles County approximately 75 percent of the school districts have 3,000 or more students, whereas the rate is 43 percent for the total of the other populous counties listed in the chart.[3] Under these circumstances, the Legislature could have reasonably believed that the assistance of the assessor is more necessary in Los Angeles because the planning of budgets for numerous large school districts is a more complex matter and the effects of a miscalculation more serious than would be the case in the other counties of the state, which contain fewer large and more small school districts.

A second factor which the Legislature might have taken into consideration in enacting section 20811 is that while other counties in the state are growing at a faster rate than Los Angeles, the annual number of new residents (and presumably new students) in Los Angeles greatly exceeds the annual increase in other counties. (Cal. Statistical Abstract (1964) p. 51.) That such a difference in numbers of new students causes special problems of a magnitude making it

---

[3]These figures are not cited by the parties, but we may take judicial notice of this data since they are contained in a publication issued by an agency of the state. (*Watson* v. *Los Altos School Dist.* (1957) 149 Cal.App.2d 768, 772-773 [308 P.2d 872].)

more significant for school districts in Los Angeles to acquire maximum funds based upon accurate revenue estimates for their school budgets than districts in other counties, does not appear to be an unreasonable assumption.

There is still another basis upon which the Legislature properly could have acted. Los Angeles County, because of the size of its population and other factors, contains property having a far higher assessed valuation, with a much larger yearly growth than any other county. (Cal. Statistical Abstract (1964) p. 205.) The volatile character of taxable property in Los Angeles is unique. The Legislature could have determined that the effort by the assessor in a county with such a large yearly growth in assessed valuation to apprise school districts of the succeeding fiscal year's approximate assessed valuation would be justified, in view of the relatively large amounts of additional revenue which could be received by the districts. On the other hand, it might have decided that, in counties where school districts would not realize such a large amount of additional revenue as a result of advance information of assessed valuation, the burden on the assessor would not be justified.

We do not intend to hold that every classification based on population alone is proper, nor do we pass upon the wisdom of the legislative action, but when section 20811 is viewed in the light of the additional factors set forth above we cannot say, as we would be required to do in order to hold it unconstitutional, that no state of facts can reasonably be conceived to justify the classification made.

The argument of the assessor that a district with a budget as large and personnel as numerous as the City of Los Angeles School District does not need the assistance of the assessor as much as do smaller school districts because it can afford expert assistance in the preparation of its budget, may have some merit in the abstract. However, we cannot hold that the Legislature was required to conclude that this matter outweighed the considerations set forth above showing a reasonable justification for the classification made in the section. Obviously some agency must make the estimate, and the Legislature was justified in finding the assessor more appropriately equipped to do so than the school districts.

Another contention made by the assessor is that the legislative history of section 20811 indicates that the Legislature, in enacting the statute, did not make an implied finding that problems of school districts in counties with over

4,000,000 population are different in kind and degree from those facing school districts in smaller counties. This argument is based on the fact that, when the section was introduced in the Legislature as Senate Bill 32, it applied to all school districts, but that it was amended in committee to apply only to districts in counties with over 4,000,000 persons. There is no merit to this argument. The first version of the bill was not passed, and the most that its introduction in a general form indicates is that the original concept of the author of the bill was that all school districts in the state should be provided with the information set forth in the section. The author's view was not adopted by the Legislature, obviously, and thus has no relevance to the question whether the Legislature as an entity could reasonably have assumed, as concluded above, that school districts in counties with a population over 4,000,000 have a greater need for the information than districts in counties with smaller populations.

 A more serious problem is presented by an assertion of the assessor that it is impossible for him to obtain some of the information set forth in section 20811 by the May 15 date specified in the section.

The first contention in this regard involves the requirement of the section that the assessor provide the districts with information as to the assessed valuation of all taxable property appearing on the ''secured roll.'' It is correctly pointed out that part of the property appearing on the ''secured roll'' is assessed by the State Board of Equalization rather than by the assessor (Rev. & Tax. Code, §§ 108, 109) and that the state board is not required to complete its work until the first Monday in August (Rev. & Tax. Code, § 753). There is no indication that a county assessor has any way of acquiring such information by May 15.[4] While the districts involved in the present proceeding do not seek information regarding the value of property which must be assessed by the state, there is no doubt that section 20811, if read literally, requires the assessor to provide such data. The districts point out, however, that state-assessed property constitutes only 1/11th of the total assessed valuation in the

---

[4]On February 24, 1965, the Los Angeles Assessor requested the State Board of Equalization to provide him by May 15 with an estimate of the assessed value of state-assessed property for the 1965-66 fiscal year, and the record contains a letter from the board to the assessor stating that the valuation of such property is not completed until many weeks after May 15.

county and it would appear, therefore, that even though the assessor may not be able to ascertain the value of such property by May 15, the basic purposes of section 20811 may be achieved without this information. A statute must be given effect whenever possible, and the fact that the assessor may not be able to comply with it in one comparatively minor respect cannot compel invalidation of the section in its entirety. (Cf. *Hodge* v. *McCall* (1921) 185 Cal. 330, 335 [197 P. 86].)

The assessor also argues that it is impossible for him to meet the May 15 deadline of section 20811 because taxpayers in the county may file property statements, upon which the assessments are partially based, between the first Monday in March and the *last Monday in May*. (Rev. & Tax. Code, § 441.) Section 20811 requires the assessor to provide only an *estimate* of assessed valuation and, in view of the fact that taxpayers begin filing property statements early in March, it would seem that a reasonably accurate estimate of assessed valuation could be provided to the districts by May 15 even though the assessor does not have information on that date regarding property included in statements filed between May 15 and May 30.

The same considerations apply to the assessor's final argument that he cannot meet the May 15 deadline because he is not required to have the "local roll" completed until the first Monday in July. (Rev. & Tax. Code, § 616.) The valuation process begins early in March (Rev. & Tax. Code, § 405), and it does not seem unreasonable to assume that a meaningful estimate of the succeeding year's values can be made by the middle of May. The fact that the assessor is not required to have the roll completed until July does not alter this conclusion. While compliance with the section may present some problems for the assessor and he might be required to make adjustments in the working procedures of his office in order to conform to its terms, this is not, in itself, a reason to hold the section invalid. If he finds the mechanical aspects onerous, he should direct his problem to the Legislature for appropriate amendment.

The application for a writ of mandate compelling the assessor to comply with section 20811 is moot insofar as the year 1965-66 is concerned, and the alternative writ heretofore issued is discharged and a peremptory writ denied. The assessor is, however, directed to comply with the terms of section

20811 as to any future requests for information made by the districts.

McComb, J., Tobriner, J., Peek, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied February 9, 1966. Traynor, C. J., and Peters, J., were of the opinion that the petition should be granted.

## APPENDIX

### Number of School Districts

| Average Daily Attendance in School Dist. | Los Angeles | Orange | San Diego | Alameda | Contra Costa | San Mateo | Santa Clara |
|---|---|---|---|---|---|---|---|
| 3,000- 4,999 students | 17 | 7 | 4 | 2 | 5 | 4 | 7 |
| 5,000- 9,999 | 32 | 9 | 6 | 2 | 5 | 5 | 9 |
| 10,000-19,999 | 15 | 8 | 4 | 4 | 2 | 5 | 5 |
| 20,000-49,999 | 8 | 2 | 0 | 1 | 1 | 0 | 1 |
| 50,000-99,999 | 1 | 0 | 0 | 1 | 0 | 0 | 0 |
| Over 100,000 | 1 | 0 | 1 | 0 | 0 | 0 | 0 |
| Total school districts with over 3,000 students..... | 74 | 26 | 15 | 10 | 13 | 14 | 22 |
| Total number of school districts in county...... | 99 | 42 | 53 | 30 | 30 | 29 | 49 |

The counties included in this chart are the only ones with school districts approaching those in Los Angeles County in terms of student population per district. (Figures taken from Cal. Education, Vol. 2, No. 9, May 1965, p. 28, published by the State Department of Education.)

PETERS, J.—I dissent. I would deny the petition for the writ of mandate because in my opinion section 20811 of the Education Code is unconstitutional for the reasons set forth by Mr. Justice pro tem. Frampton* in the opinion prepared by him for the District Court of Appeal in *Board of Education* v. *Watson* (Cal.App.) 45 Cal.Rptr. 72.

Traynor, C. J., concurred.

*Assigned by the Chairman of the Judicial Council.