133 N.J. Super. 590 (1975)
338 A.2d 28
JEROME M. EPSTEIN AND CHARLES F. KENNEDY, PLAINTIFFS,
v.
THOMAS W. LONG, WALTER E. ULRICH, EDWARD H. TILLER, HERBERT J. HEILMANN, JR., HAROLD J. SEYMOUR, JR., WILLIAM J. MC CLOUD, WALTER E. BORIGHT, JOHN D. MOLLOZZI AND EVERETT C. LATTIMORE, INDIVIDUALLY. JOINTLY AND SEVERALLY AS MEMBERS OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF UNION AND WALTER G. HALPIN, UNION COUNTY CLERK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 18, 1975.
*594 Messrs. Green, Silver & Waters, attorneys for plaintiffs (Mr. John J. Waters, of counsel).
Mr. Ralph V. Mancini, attorney for defendants.
DiBUONO, A.J.S.C.
This proceeding in lieu of prerogative writs against the individual members of the Union County Board of Chosen Freeholders and the Union County Clerk seeks a declaratory judgment concerning the validity, application and effect of L. 1974, c. 141 (N.J.S.A. 40: 41A-124(d)) and a judgment directing the county clerk to receive petitions of candidates for all nine freeholder positions in the primary and general elections in June and November 1975.
This matter comes before this court on plaintiffs' motion for summary judgment. The parties have stipulated most of the facts, and there being no genuine issue as to any remaining material facts, a determination by summary judgment is appropriate. R. 4:46-1; Judson v. People's Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).
It appears that the following series of events precipitated the filing of the complaint:
Plaintiffs were duly elected as members of the Union County Charter Study Commission by the voters of Union County on November 6, 1973, pursuant to the provisions of the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq. Simultaneously, the voters of Union County approved the public question placed on the ballot by resolution of the board of chosen freeholders for the election of a charter study commission in Union County for the purpose of studying the various forms of county government outlined by the Legislature, N.J.S.A. 40:41A-45 through 58.
The Union County Charter Study Committee reported its findings and recommendations for adoption of the county manager plan, with a freeholder board of nine members, elected for nonconcurrent terms and all elected at-large *595 by the citizens of the county, and it filed its final report with the Union County Clerk.
The charter study commission published on two successive weeks the full text of the proposed charter, together with a summary of its findings and recommendations, a summary of the provisions of the plan, and an analysis of and commentary upon the county manager plan recommended for approval. Public action took place on September 24 and October 1, 1974.
The Union County Clerk then placed upon the ballot for consideration by the voters in the general election to be held November 5, 1974 a referendum question as to whether or not the charter study commission's recommendation should be accepted. The voters of the county were given notice of the referendum by sample ballot mailed on October 30, 1974 by the Union County Board of Elections. On November 5, 1974 the county manager plan was adopted by the voters, thereby discharging the commission.
Senate Bill No. 1323 was introduced on July 24, 1974 and passed in the Senate on September 30, 1974; the bill was amended in the Assembly on October 15, 1974, then passed the General Assembly as amended on October 21, 1974, and was finally passed by the Senate, as amended by the General Assembly, on the same day. The Bill was signed into law on November 2, 1974 by the Governor and became known as L. 1974, c. 141. By its terms the measure became effective immediately.
The optional County Charter Law contains the following pertinent language in § 124(c):
The offices of the entire board of freeholders and all other offices established by any plan in this act which has been adopted by the registered voters of the county except sheriff, clerk, surrogate and register of wills shall be voted on at the first general election following adoption of such plan. In November of the first general election after the adoption of any plan provided in this act, the term of all incumbent members of the board of freeholders shall be deemed terminated at noon on the first Monday following the election of the new board of freeholders. On that date the newly elected freeholders *596 shall take office and the new board shall organize itself in accordance with the plan adopted thereunder. All freeholders and other officers elected in the first general election following the adoption of any plan provided in this act shall take office at noon on the Monday next following their election, but their terms shall expire in accordance with the plan selected, as if they had taken office on January 1 in the year following their election. But nothing in this section shall be construed to prevent an incumbent freeholder from becoming a candidate for the new board, even if his present time on the board has not yet expired. In the event that the plan approved provides for concurrent terms, all freeholders shall be elected for concurrent 3-year terms. In the event that the approved plan provides for staggered terms, terms shall be as follows:
(1) If there be five members to be elected, two shall be elected for 3 years, two shall be elected for 2 years, and one for 1 year.
(2) If there be seven members to be elected, three shall be elected for 3 years, two for 2 years, and two for 1 year.
(3) If there be nine members to be elected, three shall be elected for 3 years, three for 2 years, and three for 1 year.
In all elections, after the first election under this act, all members shall be elected for 3-year terms beginning on January 1 in the year following their election.
L. 1974, c. 141, amended § 124 of the Optional County Charter Law by adding section (d):
If the adopted plan shall provide for a new board of freeholders composed of the same number of freeholders as served on the existing board with all members to be elected at large for non-concurrent terms, the initial elections to the new board of freeholders shall be held to fill only those freeholder offices for which the terms would have otherwise expired on January 1 next following the date of election but for the provisions of this act. The board members so elected shall serve for a term of 3 years expiring the following January 1 as provided in section c. hereof.
The terms of the incumbents of the existing board whose offices are filled at the initial election shall be deemed terminated at noon on the first Monday following the election of the new member of the board. On that date, the newly elected freeholders shall take office and together with those freeholders whose terms have not expired, shall constitute the new board.
Plaintiffs' contention is that L. 1974, c. 141, amending N.J.S.A. 40:41A-124, is void and of no force and effect as to the referendum adopted on November 5, 1974; void and of no force and effect as in violation of N.J.S.A. *597 40:41A-1 et seq.; unconstitutional as in violation of the Equal Protection and Due Process Clauses of the State and Federal Constitutions; unconstitutional as "special" legislation regulating the internal affairs of Union County, and void and of no force and effect upon the primary election in June 1975 and the general election of November 1975.
The sole issue before this court is the validity, application and effect of L. 1974, c. 141, amending N.J.S.A. 40:41A-124, both generally and as to the 1975 elections.
There is a strong presumption that a statute is constitutional, General Electric Co. v. Passaic, 28 N.J. 499, 510 (1958), and to declare a statute unconstitutional is a judicial power to be delicately exercised. Wilentz v. Hendrickson, 133 N.J. Eq. 447, 487 (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944). A legislative act will not be declared null and void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. Gangemi v. Berry, 25 N.J. 1, 10 (1957). Here plaintiffs have the heavy burden of overcoming these statutory presumptions and principles. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 388 (1959).

I

Is chapter 141 violative of the equal protection guarantees of the United States and New Jersey Constitutions?
Plaintiffs realize that the constitutional requirement of equal protection is met by legislation which treats all persons within a class reasonably selected in a like or similar manner. Kohler v. Barnes, 123 N.J. Super. 69 (Law Div. 1973). Notwithstanding, they contend that the classification in the present case rests upon grounds wholly irrelevant to the achievement of the State's objective. Because only Union County comes within the exception created by chapter 141, only the incumbent Union County *598 freeholders need not stand for re-election in 1975, while the incumbent freeholders in other counties must run again.
The intent of the Legislature in enacting L. 1974, c. 141, can be gleaned from the statement attached to the bill itself (S. 1323). The Legislature decided as a matter of public policy that any change in the form and structure of local government under the Optional County Charter Law should, where possible, provide for an effective continuation in office of knowledgeable and experienced incumbents, previously elected by the people, whose terms have not yet expired at the time of the change in the structure of government.
It must be remembered that chapter 141 was introduced in the New Jersey Senate on July 24, 1974, before the findings and recommendations of any charter study commissions throughout the State had to be reported. N.J.S.A. 40:41A-12. Hence, when the measure was introduced the Legislature had no idea what forms of government, if any, would be recommended by the various charter study commissions. Having determined that continuity of experience in government was a desirable end, the Legislature remained cognizant of the atmosphere within which it was acting. The Legislature was well aware that the forms of government which it had outlined in the Optional County Charter Law were diverse in many respects, and a smooth transition from an old to one of the new forms, together with achieving the goal of continuity in government, could only be effectuated in limited circumstances, namely, where the number of freeholders on the new board were equal in number to, and were elected in the same manner as those of the old board; that is, where all of the freeholders were required to be elected at large. L. 1974, c. 141. That Union County would be the only county to fall within these limited circumstances could not be foreseen by the Legislature. Also, the applicability of chapter 141, when enacted, to even Union County was tentative because it depended entirely upon whether the *599 electorate voted for the county manager plan recommended by the commission. There can be no doubt that the scope of chapter 141 could only be termed "speculative" on the date of its introduction.
This court holds that the classification created by L. 1974, c. 141, bears a reasonable and just relation to not only the general objective of the legislation, but also to substantial considerations of public policy. Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949.) The Legislature has a wide range of discretion in determining classifications, and the factors already mentioned, which this court believes affected the thinking of the Legislature in enacting chapter 141, are sufficient to furnish a rational basis for the classification thereunder.

II

Does L. 1974, c. 141, constitute "special" legislation?
N.J.S.A. 1:6-10 et seq. governs the procedure to be followed for the enactment of special legislation regulating the internal affairs of a county. The details of those statutes need not be set forth here, as there is no question that the requirements of those laws were not adhered to in the case at bar. The issue, of course, is whether or not compliance therewith was necessary.
In deciding whether an act is general or special, what is excluded is the determining factor, and not what is included. Koons v. Atlantic City Bd. of Comm'rs., 134 N.J.L. 329 (1946), aff'd 135 N.J.L. 204 (E. & A. 1947). If no one is excluded that should be encompassed, the law is general. A general law must affect equally all of a group who, bearing in mind the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. Harvey v. Essex Cty. Bd. of Freeholders, supra, 30 N.J. at 389.
Special laws rest on a false and deficient classification in that "their vice is that they do not embrace *600 all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." Van Riper v. Parsons, 40 N.J.L. 1, 9 (Sup. Ct. 1878). This court cannot say that the case at hand illustrates such a situation. As explained above, the combination of different procedures for the election of freeholders within the separate counties and the recommendations of the various county charter study commissions resulted in Union County being the only county in which continuity of experience in government could be achieved along with a workable transition to a new form of county government. No other county presented a similar situation. Hence, this court is of the opinion that L. 1974, c. 141, does not constitute "special" legislation, and neither the Union County freeholder board nor the voters of Union County had to petition the Legislature in order to render that statute constitutional. N.J.S.A. 1:6-10 et seq.

III

Does the Legislature possess the power to amend referendum legislation before the referred matter has been voted upon?
Plaintiffs argue in Points 6 and 7 of their brief that the Legislature, in enacting the Optional County Charter Law (N.J.S.A. 40:41A-1 et seq.) provided that each charter study commission was to select and designate its choice of procedure for succession in government from the alternatives set out by the Legislature in that law, N.J.S.A. 40:41A-14. (This, of course, would only occur if a particular charter study commission voted to recommend adoption of one of the optional plans.) If this be so, and defendants do not dispute same, then plaintiffs' contention is that the only succession in government proposal validly *601 before the Union County voters on November 5, 1974 was the recommendation of the Union County Charter Study Commission. Plaintiffs ask this court to rule that L. 1974, c. 141, amending N.J.S.A. 40:41A-124, could not be considered by the voters because the Legislature lacked the power to amend the referred measure while the voters were in the process of expressing their views on the subject.
Both counsel have invited this court's attention to the case of State ex rel. Drain v. Becker, Secretary of State, 240 S.W. 229 (Mo. Sup. Ct. 1922). There the court defined the term "referendum" to be a "reservation by the people of the right to have submitted to them for their approval or rejection any laws passed by the Legislature, except those necessary for the immediate preservation of the public peace, health or safety, appropriations for the current expenses of the state government, the maintenance of State institutions, and the support of public schools." 240 S.W. at 230-31. Missouri Constitution, Art. 4, § 57, which details the steps to be followed by the people in invoking the right of referendum, also states, however, that "this section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure." Consequently, the Secretary of State contended that the right of reference reserved to the people could be forestalled or nullified by legislative action before the referred matter had been voted upon. 240 S.W. at 232.
In a 4-3 decision the Supreme Court of Missouri held that the provision cited by the Secretary of State meant "Any measure except those which, if adopted, will interfere with or defeat the rights granted in the preceding portions of the section," 240 S.W. at 232, meaning the right of referendum. The forceful dissent stated that the language in Art. 4, § 57 could not be any clearer, and the provision meant nothing less than that, notwithstanding a referendum has been invoked, the right of the legislature *602 itself to introduce and pass "any" measure is unaffected thereby. 240 S.W. at 233.
Agreeing with the dissent in Becker is In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333 (1913). Presented with the same constitutional language as the Missouri court, the Colorado justices decided that the General Assembly could abridge the right to invoke the referendum. 130 P. at 336.
Relatively few states have had the opportunity to consider the question before this court. See also, In re Opinion of the Justices, 132 Me. 512, 174 A. 853 (1933). However, this court has been forced to examine those decisions because of the paucity of case law in our own State. Peculiarly, the absence of authority in New Jersey may furnish the resolution of the problem.
In New Jersey, unlike Missouri and Colorado, the right of initiative and referendum does not exist as a recognized limitation upon the legislative power. N.J. Const. (1947), Art. IV, § I, para. 1 states, "The legislative power shall be vested in a Senate and General Assembly." The word "referendum" does not appear in the Constitution, nor is it alluded to.
The Legislature, in establishing the Optional County Charter Law (N.J.S.A. 40:41A-1 et seq.) extended to the people of each county the privilege of electing a charter commission to study the governmental structure of their own county, and then voting on the commission's recommendation, if any, of one of the governmental plans which the Legislature had devised. It is reasonable to conclude that the Legislature, by enacting the amendment, L. 1974, c. 141, was motivated, not by the intention to avoid or evade the effect of the referendum, but rather to support it by implementing its policy of continuity of experience in government in certain instances where it would be possible to do so without thwarting the will of the electorate, in the event a new form of county government should be adopted. *603 This court does not believe that if the Legislature discovered that the alternative plans it had drafted were deficient in some respect, any action taken by the Legislature to correct that deficiency would be invalid simply because the plans had been referred to the voters. This is especially so in a State such as ours where, as previously indicated, the legislative power rests solely in the Senate and General Assembly. If the Legislature must refrain from affirmative action in this type of situation, laws will inevitably be adopted which are not in the best interests of the people of New Jersey.
The referendum here was enacted statutorily, and the plans which are the subject matter of the referendum can be amended by statute. See also, Smith v. Livingston Tp., 106 N.J. Super. 444 (1969), aff'd 54 N.J. 525 (1969). Hence, L. 1974, c. 141, was properly before the voters of Union County on November 5, 1974, and the ballot reflected the provisions of that act. The voters were asked to elect three freeholders for a three-year term. Because of this court's holding that L. 1974, c. 141, is constitutional and valid, the three freeholders duly elected on November 5, 1974, in addition to the freeholders elected on November 6, 1973, will be permitted to serve their full three-year terms.
Plaintiffs' remaining claim, that L. 1974, c. 141, is invalid because the Legislature did not comply with sections 1 through 23 of the Optional Charter Law (N.J.S.A. 40:41A-1 et seq.) is without merit. See N.J.S.A. 40:41A-124(a). Those sections only apply to the procedure which must be adhered to by the freeholders and/or voters of each county in presenting a charter study election question. The Legislature is not bound by the language contained therein.
For the reasons stated, this court is of the opinion that L. 1974, c. 141, is constitutional and valid, and that it applied with full force and effect to the November 5, 1974 *604 election. Therefore, plaintiffs' motion for summary judgment is hereby denied and the Union County Clerk is directed to accept petitions from candidates for only the three freeholder offices expiring at midnight on December 31, 1975.