180 N.J. Super. 282 (1981)
434 A.2d 676
THE PARKING AUTHORITY OF THE CITY OF ATLANTIC CITY, A BODY CORPORATE AND POLITIC CONSTITUTING AN INSTRUMENTALITY OF THE CITY OF ATLANTIC CITY, PLAINTIFF,
v.
THE BOARD OF CHOSEN FREEHOLDERS OF ATLANTIC COUNTY, THE COUNTY OF ATLANTIC AND THE BOARD OF COMMISSIONERS OF THE CITY OF ATLANTIC CITY, DEFENDANTS,
v.
ATLANTIC COUNTY TRANSPORTATION AUTHORITY, DEFENDANT/INTERVENOR.
Superior Court of New Jersey, Law Division Atlantic County.
Decided June 24, 1981.
*285 Irwin I. Kimmelman for plaintiff (Kimmelman, Wolf & Samson, attorneys).
Salvatore Perillo, Atlantic County Counsel, for defendants Board of Chosen Freeholders of Atlantic County and The County of Atlantic.
Matthew H. Powals, City Solicitor, for defendant Board of Commissioners of the City of Atlantic City.
Richard D. Alten, for defendant/intervenor Atlantic County Transportation Authority (Alten, Valentine, Seltzer & Shultz, attorneys).
STEEDLE, J.S.C.
The within action is a complaint in lieu of prerogative writs. The court presently has before it cross-motions for summary judgment which will be dispositive of the entire controversy.
Plaintiff alleges substantially that the County Transportation Authorities Act (L. 1980, c. 44; N.J.S.A. 40: 35B-1 et seq.) is unconstitutional as special legislation adopted in contravention of the requirements of N.J. Const. (1947), Art. IV, § VII, pars. 8, 9 and 10, and N.J.S.A. 1:6-10. As the result of that claim plaintiff avers that Atlantic County, New Jersey Ordinance 11-1980 (July 9, 1980), which purports to establish the Atlantic County Transportation Authority, is void and ultra vires; similarly, plaintiff avers that the provision of L. 1980, c. 44, § 6(b), mandating the dissolution of any municipal parking authority previously created within an enacting county, is ultra vires and void. As to the latter claim, plaintiff contends that the challenged statute herein constitutes an unlawful attempt to regulate the internal affairs of a municipality. By way of amended complaint plaintiff further claims that the County Transportation Authorities Act includes two objects in its provisions and is thereby violative of N.J. Const. (1947), Art. IV, § VII, par. 4.
*286 The original plaintiff herein was The Parking Authority of the City of Atlantic City, which was created by Atlantic County, New Jersey Ordinance 19-1966 (August 4, 1966), and pursuant to the provisions of N.J.S.A. 40:11A-1 et seq.[1] Defendants Atlantic County and the Atlantic County Board of Freeholders filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to R. 4:6-2(e).
Since it is well-established that "[l]ocal government has the right to seek or to oppose legislation affecting its interest," it logically follows that plaintiff herein has standing to maintain the present litigation. See Reilly v. Ozzard, 33 N.J. 529, 544 (1960); but cf. Durgin v. Brown, 37 N.J. 189, 204 (1962) (a municipal body may not expend public funds for the purpose of supporting factional controversies; said activities must comport with general notions of the public interest). Further, in light of the briefs and arguments of counsel, which are outside the scope of the pleadings, the court has elected to treat defendants' motion as one for summary judgment. R. 4:6-2.
Since the challenge to the contested statute herein is founded largely on plaintiff's allegation that the statute constitutes special legislation, a comprehensive review of the pertinent provisions of L. 1980, c. 44, the County Transportation Authorities Act (hereinafter "the act"), is appropriate at this juncture. L. 1980, c. 44, § 2, expressly incorporates the legislative findings *287 and declaration of purpose with respect to the act and provides in pertinent part as follows:
The Legislature finds and declares that as a result of the "Casino Control Act" (P.L. 1977, c. 110; C. 512-1 et seq.) and the introduction and development of legalized casino gaming in Atlantic City, intense demands have been placed upon the citizens of the Atlantic County region for the development and provision of integrated and adequate transportation systems. The Legislature finds that the orderly planning, development, construction, acquisition, financing and operation of modern transportation systems on a countywide basis in that region will benefit residents of, and visitors to, this State, promote the economic vitality of the region and the State, avoid the evils of haphazard growth and land-use development, and advance the efficient use of energy and other resources. The Legislature further finds that the present and future need for regional planning and development of transportation systems in Atlantic County is a wholly exceptional situation, no parallel to which exists, or is likely to exist in the near future, anywhere in the State.
The Legislature, therefore, declares that it is in the public interest of the citizens of this State to foster and promote by all reasonable means the provision of modern transportation and parking facilities in the Atlantic County region, and that the best means to accomplish this purpose is to authorize the creation of an appropriate regionally oriented instrumentality in the county which will permit the most direct and immediate attention to the particular transportation needs of the Atlantic County region, consistent with the need for, and procedures and structures established with respect to, efficient and convenient statewide transportation systems.
Section 13 of the act contains an elaboration of a county transportation authority's role, as follows:
The purpose of a county transportation authority shall be the improvement, establishment and development of parking and transportation facilities by or through the planning, design, acquisition, construction, improvement, maintenance or operation of any and all projects and facilities for the improvement and development of a modern, efficient and integrated transportation system, or directly related thereto, either directly or by agreement with any county, municipality or person, or in any other manner, which in the judgment of the authority will provide an effective and satisfactory method for promoting its purposes.
In light of the legislative findings as set forth hereinabove, § 4 of the act provides that the "governing body of any county in which is located a municipality in which casino gaming is authorized" may adopt an ordinance or resolution creating a county transportation authority which will be a "public body corporate and politic" and "an instrumentality of the county...." Section 6(a) of the act provides that upon its creation a *288 county transportation authority shall have preemptive jurisdiction with respect to public transportation matters and shall be the exclusive instrumentality with responsibility for those services.[2] Significant for the purposes of the present litigation are those provisions contained in § 6(b) of the act which mandate that upon creation of a county transportation authority any municipality having previously created a parking authority shall forthwith provide for its dissolution.[3]
The Act provides that the powers of a county transportation authority shall be vested in its membership. L. 1980, c. 44, § 8(a). The membership of a county transportation authority shall be composed of seven members, as follows: (1) one member shall be a representative of the county government, (2) one shall be the Commissioner of the (New Jersey) Department of Transportation ex officio and (3) five shall be residents of the enacting county. (Parenthetical supplied.) P. 1980, c. 44, § 4(b). Section 8(b) of the act provides that the minutes of every *289 meeting of a county transportation authority shall be subject to the item veto of the chief executive officer of the enacting county.
Substantively, § 14 of the act provides that the county transportation authority shall prepare or cause to be prepared a master plan for the development of a comprehensive transportation system, that plan to be subject to the review by and the approval or disapproval of the State Commissioner of Transportation. The act further authorizes a county transportation authority to perform those powers normally incident to a public body, including the right to contract, the right to initiate condemnation proceedings and the right to issue bonds. The court notes that § 15(d) of the act provides that "In its own name, but for the county, to acquire, rent, hold, use and dispose of other personal property for the purposes of the authority, and to acquire by purchase, gift, condemnation or otherwise, or lease as lessee, real property and easements therein ..." The above outline of the act is sufficient for purposes of the present opinion.
Since the complaint avers that the act constitutes special legislation, it is appropriate to outline the standards to be applied in making such a determination. The standard to be applied in determining whether a statute is general or special was detailed by the Supreme Court in Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381 (1959), and is set forth in pertinent part, as follows:
In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. [Citation omitted.] If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. [at 389]
The court elucidated on the applicable standard as follows:
... [L]ocal and special laws rest on a false or deficient classification in that "... their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." [Ibid.]
*290 Citing Van Riper v. Parsons, 40 N.J.L. 1, 9 (Sup.Ct. 1878). See, also, Vreeland v. Byrne, 72 N.J. 292, 299 (1977).
If, after application of the above-stated standard, this court determines that the County Transportation Authorities Act is special legislation, the statute must fall because of noncompliance with the constitutional mandates of N.J. Const. (1947), Art. IV, § VII, Par. 10.[4] Additionally, Art. IV, § VII, par. 9, of the New Jersey Constitution, provides that "The Legislature shall not pass any private, special or local laws: ... (13) regulating the internal affairs of municipalities formed for local government and counties except as otherwise in this Constitution provided." It has been stipulated between and among the parties that neither the constitutional nor statutory provisions governing special legislation has been satisfied with respect to the enactment of the County Transportation Authorities Act.
Defendants, as proponents of the validity of the act, contend that Atlantic City and its environs have encountered unique transportation problems as a result of the advent of casino gaming in Atlantic City, as is reflected in the legislative findings set forth hereinabove.[5] The County Transportation Authorities *291 act seeks to address the collateral transportation problems which have arisen since the advent of casino gaming in Atlantic City. A review of the statute as set forth hereinabove reveals that the act is only applicable to Atlantic County. Absent an organic change in the New Jersey Constitution, it is impossible for any other county to avail itself of the authority provided by the act. This court must therefore determine whether Atlantic County, as the only county within which casino gaming is authorized, constitutes a valid classification for purposes of the act. The issue before this court is one of first impression and of substantial import in that it requires a determination as to when it is appropriate to specifically classify Atlantic County as a unique area, based upon collateral problems which may arise as the result of casino gaming.
At the threshold, the court notes that there is a strong presumption that a statute is constitutional, Harvey v. Essex Cty. Freeholder Bd., supra, 30 N.J. at 388; General Electric Co. v. Passaic, 28 N.J. 499, 510 (1958); Epstein v. Long, 133 N.J. Super. 590, 597 (Law Div. 1975), and to declare a statute unconstitutional is a judicial power to be delicately exercised. Harvey v. Essex Cty. Freeholder Bd., supra 30 N.J. at 388; Epstein v. Long, supra, 133 N.J. Super. at 597. Plaintiff herein has the burden of clearly establishing beyond a reasonable doubt the unconstitutionality of the County Transportation Authorities Act. Id. at 597.
Plaintiff contends that the act is intended to remedy problems related to transportation and that in light of such purpose Atlantic County is not sufficiently different from any other county in the State which may have transportation problems. If the court finds that the transportation problems created by casino gaming in the Atlantic County region are of sufficient *292 magnitude so as to differentiate Atlantic County from the other counties in the State, the classification is valid and may stand as a general law. Alternatively, if the court determines the classification herein to be arbitrary or unreasonable, then the act would constitute special legislation.
The Legislature has a wide range of discretion in determining classifications, provided that a particular classification bears a reasonable and just relation not only to the general objective of the legislation, but also to substantial considerations of public policy. Washington Nat'l Ins. Co. v. Board of Review, 1 N.J. 545 (1949); Epstein v. Long, supra, 133 N.J. Super. at 599. The mere fact that a class embraces but one entity which is distinct from all others does not in and of itself render the legislation a special, private or local law. Hardy v. Ruhnke, 47 N.J. 10, 21 (1966); Bayonne v. Palmer, 90 N.J. Super. 245, 284 (Ch.Div. 1966, aff'd 47 N.J. 520 (1966); compare Alfred Vail Mut. Ass'n. v. New Shrewsbury, 58 N.J. 40, 50 (1971) (holding that, while facially general, the statutory criteria which excluded every school district but one from the scope of the challenged statute was arbitrary and lacked a reasonable nexus to the objects of the statute).
While plaintiff contends that the transportation and traffic problems of Atlantic City should not be considered separate and apart from the transportation problems of any other county in the State, defendants maintain that in light of the constitutional amendment permitting casino gaming in Atlantic City and the resulting increased activity related thereto, Atlantic County may reasonably be classified in a manner separate and apart from the other counties of the State with respect to transportation problems.
This court is confronted with a situation in which a municipality has been uniquely classified by virtue of a constitutional amendment. Such a classification is unprecedented in this State's history. This court's research has revealed that at least one sister state has collaterally addressed the relationship between *293 constitutional provisions and legislative classifications for purposes of determining whether a statute is special or general. In Los Angeles Bd. of Ed. v. Watson, 63 Cal.2d 829, 48 Cal. Rptr. 481, 409 P.2d 481 (1966), Justice Mosk, writing for a majority of the California Supreme Court, noted that "while a legislative classification is improper if it is not founded upon some natural, constitutional or intrinsic distinction which reasonably justifies a difference in treatment, a classification which has a substantial relation to a legitimate object to be accomplished is valid." 48 Cal. Rptr. at 484, 409 P.2d at 484; emphasis supplied. It thus appears that a constitutional distinction may provide a valid basis for a legislative classification. Applying the above rationale, it follows that legislative enactments which are inherently related to the subject matter of a constitutional provision would be readily sustainable in the appropriate circumstances.
The present litigation presents a different issue. The County Transportation Authorities Act does not seek to address a matter which is inherently related to the casino gaming amendment; it seeks instead to address a situation which is only derivatively the result of the implementation of casino gaming in Atlantic City. In light of Atlantic City's unique constitutional status, it is all too easy to use that status as the basis for well-intentioned yet conceivably arbitrary solutions to a multitude of potential problems which are directed solely to Atlantic City or its environs. It must be inferred that the adoption of the casino gaming amendment to the Constitution in no way constituted an abrogation of the rights and privileges of the citizens of the Atlantic County region. This court therefore finds that the mere authorization of casino gaming in Atlantic City does not in and of itself justify the legislative classification contained in the County Transportation Authorities Act.
It should, however, be recognized that, as a result of the implementation of casino gaming, Atlantic City and its environs have encountered collateral problems which are unique. These problems have resulted from the substantially increased economic *294 growth in the region, which is consistent with the purposes of the casino amendment to the State Constitution, to wit, the creation of an economic catalyst intended to spur economic expansion and the revitalization of the State's tourist industry. Further, the success of New Jersey's casino industry depends substantially upon Atlantic City's ability to attract large numbers of nonresident visitors. This court takes judicial notice of the fact that the volume of visitors to Atlantic City and its environs has increased substantially since the opening of the first casino in Atlantic City; that volume is likely to continue its rapid, geometric expansion as the evolution of Atlantic City continues. Evid.R. 9(2)(e) (Anno. 1980). These findings are clearly supported by the record before the court in the present litigation.[6] In light of these facts, this court finds that the Legislature has a proper interest in seeking to enhance the public welfare of the Atlantic County region and that the object of the act is valid.
Since Atlantic County is unique among the State's counties by virtue of the presence within its boundaries of a municipality in which casino gaming is authorized, a classification *295 related to collateral problems may be justified upon case-by-case analysis.[7] It is not necessary that the Legislature address every locale that may be confronted with a similar (as opposed to an identical) problem which is the intended object of a particular remedial statute. See Meadowlands Regional Develop. Agency v. State, 112 N.J. Super. 89, 108 (Ch.Div. 1970), aff'd 63 N.J. 35 (1973); Toms River Affiliates v. Environmental Protection Dep't, 140 N.J. Super. 135, 148 (App. Div. 1976).[8] This court finds that, while other counties in the State may well be confronted with traffic and transportation problems, it is clear that the problems which have arisen in the Atlantic County region are significantly different. Both the intensity and the immediacy of the transportation problem in Atlantic County factually renders the area unique. The mere fact that similar exigencies may confront other counties at some point in the future does not limit the ability of the Legislature to address the problems presently confronting Atlantic County. Meadowlands Regional Develop. Agency, supra, 112 N.J. Super. at 103.
This court finds that where the Legislature seeks to address a collateral problem, as opposed to an inherent problem, resulting from Atlantic City's unique constitutional status, it is reasonable to infer that the rapidity, intensity and scope of Atlantic City's redevelopment may well create unique problems. A classification directed to regions affected by these collateral *296 problem is appropriate if a direct nexus can be established between the advent of casino gaming and the collateral problem created thereby.
The court finds that a sufficient nexus exists between the presence of casino gaming in Atlantic City and the transportation problems created thereby. Relative analysis sustains a conclusion that transportation is the most immediate collateral problem related to casino gaming. The extent of the economic benefits which will accrue to the State are directly dependent upon a continuous and increasing transient population sufficient to support continued growth. A comprehensive transportation system is a major element in achieving that result. The court rejects plaintiff's argument that the use of Atlantic County as the geographic region is inappropriate. It is not necessary for the Legislature to draw boundaries with mathematical precision. While it is apparent that the region could have been defined differently for purposes of creating a regional transportation agency, the classification appears reasonable in light of the problem sought to be addressed. See Meadowlands Regional Develop. Agency, supra, 112 N.J. Super. at 102.
This court holds that the legislative classification is reasonable in light of the object which the County Transportation Authorities Act seeks to achieve, since the transportation and traffic problems in Atlantic City and its environs are unique, as detailed above. This court finds that the object of the legislation, namely, the creation of a public body charged with the development, coordination and operation of public transportation facilities in the Atlantic County region, is of sufficient public interest to justify the classification. Cf. N.J. Sports and Exposition Auth. v. McCrane, 61 N.J. 1, 15-16 (1972) (holding that it was within the legislative discretion to find that a sports and exposition complex is a public project and serves a public purpose).
This court is aware of the fact that the legislative approach is novel, in that the subject statute herein is an enabling statute which authorizes a county government to create a regional *297 agency within the confines of the county for purposes of addressing a unique problem therein. The approach chosen by the Legislature does not render the contested statute invalid, given this court's previous findings. See Hardy v. Ruhnke, supra, 47 N.J. at 21. The court is of the opinion that the mere fact that the Legislature may choose to address certain collateral problems by means of statutory enactments applicable to all counties does not defeat an otherwise valid classification directed only to one region of the State. Id. at 21-23. The County Transportation Authorities Act provides for substantial participation by the State of New Jersey. Specifically, as outlined above, the statute provides that the State Commissioner of Transportation shall be an ex officio member of the County Transportation Authority; further, the statute mandates that a county transportation authority develop a comprehensive master plan in conjunction with the State Department of Transportation and subject to approval or disapproval of the New Jersey Commissioner of Transportation. This court finds that the State has a substantial interest in coordinating and planning the present and future transportation system in the Atlantic County region. Accordingly, the court holds that plaintiff has failed to satisfy its burden of proof and that the legislative classification of counties in which casino gaming is authorized is reasonable in light of the object sought to be achieved by the County Transportation Authorities Act. The court concludes that there is adequate factual basis to support the Legislature's classification.
Since this court has determined that the County Transportation Authorities Act, L. 1980, c. 44, is a general law, the provisions of N.J.Const. (1947), Art. IV, § VII, pars. 8 and 10, are inapplicable to the act. Further, the act does not violate Art. IV, § VII, par. 9, wherein the Legislature is prohibited from passing "any private, special or local laws ... (13) regulating the internal affairs of municipalities formed for local government and counties, except as otherwise in this constitution provided." Since the act has been held to be a general act, the concluding paragraph of Art. IV, § VII, par. 9, is applicable and provides *298 that: "The Legislature shall pass general laws providing for the cases enumerated in this paragraph, and for all other cases which in its judgment, may be provided for by general laws...."
The court finds that the Atlantic County ordinance creating the Atlantic County Transportation Authority is valid and that the statutory mandate directing the Atlantic City Board of Commissioners to dissolve the Atlantic City Parking Authority and the resulting ordinance are also valid. It is well recognized that "the State may withdraw municipal police power, and as a general rule the State Legislature, unless restricted by the Constitution, may withdraw such power in whole or in part and exercise it itself or provide for its exercise by some other duly constituted agency." 6 McQuillin, Municipal Corporations (3 ed. 1980), § 24.42. This principle has been recognized in New Jersey, as revealed in Terminal Enterprises, Inc. v. Jersey City, 54 N.J. 568 (1969), wherein the Supreme Court stated:
The Legislature can reallocate the powers of a municipality to a public agency ... There is no difference between the Legislature reallocating powers from a municipality to a public agency and authorizing a municipality to partially cede those powers to such an agency. [at 576]
The court finds the aforementioned principle to be directly applicable to the present case.
In light of this court's holding that the County Transportation Authorities Act is a general statute, there is no constitutional prohibition restricting the reallocation of certain municipal authority through the State to a newly created public agency. The court finds that the County Transportation Authorities Act is a valid enabling statute and that Atlantic County Ordinance 11-1980 (July 9, 1980) was duly and validly enacted. See Jones v. Buford, 71 N.J. 433, 436 (1976); Hardy v. Ruhnke, supra, 47 N.J. at 21-23. The court finds that the act mandates that, upon the creation of a county transportation authority, any municipality within the enacting county's boundaries shall dissolve any previously created parking authority. Since municipalities in New Jersey have no power other than *299 those delegated to them by the Legislature and by the State Constitution, the State may withhold from or grant a given power to a municipality. It is necessary for a reviewing court to make a determination as to whether the Legislature intended to preempt certain municipal powers. See Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348, 351 (1971). Given the clear language of the act, the court finds that it was the legislative intent that, upon the creation of a county transportation authority, said agency would have exclusive jurisdiction of public transportation policy within that region, subject to applicable state restrictions.
The final issue to be addressed is plaintiff's contention that the County Transportation Authorities Act is violative of N.J. Const. (1947), Art. IV, § VII, par. 4, which provides:
To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title. This paragraph shall not invalidate any law adopting or enacting a compilation, consolidation, revision, or rearrangement of all or parts of the statutory law.
The subject statute herein is entitled "County Transportation Authorities Act." Plaintiff contends that the inclusion in the subject statute which mandates the dissolution of certain pre-existing parking authorities thereby requires inclusion of that "object" in the act's title.
The title to an act is merely a label, not an index, and should not be scrutinized in an overly technical manner. Howard Savings Inst. v. Kielb, 38 N.J. 186, 200 (1962). The title of an act need not be an index to all that it contains and need not set forth all of its exclusions or conditions; a title is intended solely as a label and is required only to set forth the object of the act, not its product. Robson v. Rodriguez, 26 N.J. 517, 527 (1958). "The evil intended to be guarded against [by the single-object rule] was not the inclusion in one act of more than a single matter, but the inclusion therein of matters not properly related among themselves." New Jersey Ass'n on Correction v. Lan, 80 N.J. 199, 206 (1979) (citing the Appellate *300 Division opinion below, 164 N.J. Super. 115, 121). Where the component parts of an act contain several objects in furtherance of its purpose and the title of the act accurately reflects its object, the act is not violative of the one-object provision of the New Jersey Constitution. See Meadowlands Regional Devel. Agency, supra, 112 N.J. Super. at 125. This court finds that the title of the County Transportation Authorities Act accurately reflects its object, to wit, the creation of a public agency charged with the responsibility for implementing the regional public transportation system. The court further finds that the dissolution of pre-existing municipal parking authorities is properly related to the object of the County Transportation Authorities Act. The court finds that the legislative intent to eliminate the potential for overlapping agencies, so as to avoid conflicting policy decisions, justifies the dissolution of previously existing parking authorities.
For the reasons stated hereinabove, this court hereby grants defendants' motion for summary judgment and hereby denies plaintiff's motion for summary judgment.
NOTES
[1] Atlantic City v. Atlantic Cty. Transp. Auth., Docket L-7034-80, is a companion case to the present litigation wherein plaintiff sought a declaratory judgment as to the required date for dissolution of its parking authority as required by L. 1980, c. 44, § 6(b). On November 14, 1980 this court entered an order finding, among other matters, that August 4, 1980 was the effective date of the creation of the Atlantic County Transportation Authority and directing the Atlantic City Board of Commissioners to adopt, nunc pro tunc, a supplemental ordinance of dissolution of plaintiff parking authority reflecting the effective date of August 4, 1980. At that time this court permitted James Brennan, the former chairman of the Atlantic City Parking Authority, to intervene personally so as to protect the parties' rights with respect to the within constitutional challenge.
[2] L. 1980, c. 44, § 6(a), provides:

No county which shall create an authority pursuant to this act shall thereafter create any other county transportation authority, or utilize any other law for the provision of public transportation services which can be provided pursuant to this act, or create or join in the creation of any county parking authority pursuant to "Parking Authority Law," P.L. 1948, c. 198 (C.40:11A-1 et seq.) or P.L. 1972, c. 83 (C.40:34A-1 et seq.), or any other law. No municipality or any other governmental entity within a county which shall create an authority pursuant to this act shall thereafter utilize any other law for the provision of public transportation services which can be provided pursuant to this act, nor create or join in the creation of any municipal parking authority pursuant to the "Parking Authority Law" or any other law. [Emphasis supplied].
[3] L. 1980, c. 44, § 6(b), provides:

If a county, or a municipality within a county which creates a county transportation authority pursuant to this act, shall have previously created a parking authority pursuant to the "Parking Authority Law," P.L. 1948, c. 198 (C.40:11A-1 et seq.), P.L. 1972, c. 83 (C.40:34A-1 et seq.), or any other law, that county or municipality shall provide, by ordinance or resolution, as appropriate, for the dissolution of the parking authority upon the effective date of the creation of the county transportation authority....
[4] Private, Special or Local Laws; Municipalities and Counties

Upon petition by the governing body of any municipal corporation formed for local government, or any county, and by vote of two-thirds of all the members of each house, the Legislature may pass private, special or local laws regulating the internal affairs of the municipality or county. The petition shall be authorized in a manner to be prescribed by general law and shall specify the general nature of the law sought to be passed. Such law shall become operative only if it is adopted by ordinance of the governing body of the municipality or county or by vote of the legally qualified voters thereof. The Legislature shall prescribe in such law or by general law the method of adopting such law, and the manner in which the ordinance or adoption may be enacted or the vote taken, as the case may be. [See N.J.S.A. 1:6-10]
[5] The citizens of New Jersey, in a statewide referendum conducted on November 2, 1976, approved an amendment to the New Jersey Constitution; the amendment authorized casino gaming within the boundaries of Atlantic City. The amendment is reflected in N.J.Const. (1947), Art. IV, § VII, par. 2(D). Pursuant to the enabling provisions of the aforesaid constitutional amendment, the New Jersey Legislature adopted L. 1977, c. 110; N.J.S.A. 5:12-1 et seq. (Casino Control Act), which comprehensively addresses the implementation, operation and conduct of the casino gaming industry and its necessarily related counterparts.
[6] Actual statistics and projections, as reported by the Atlantic City Express-way Authority under date of May 15, 1980, reveal that Atlantic City would attract more visitors than Las Vegas, Nevada in 1980; the following facts contained therein are significant:

I. ANNUAL NUMBER OF VISITORS (Millions)

 1978 1979 1980
 Atlantic City 7.0 9.6 12.5
 Las Vegas 11.2 11.7 12.3

II. MODAL SPLIT, VISITORS TO ATLANTIC CITY

 Mode 1978 1979 1980 Percent Increase
 1978-80 
 Automobile 6,445,132 7,909,313 9,194,469 43%
 Charter Bus 200,000 1,000,000 2,500,000 1115%
 Line Bus 352,609 536,250 747,500 112%
 Air 10,000 20,000 25,000 150%

[7] The court notes that the Legislature has previously addressed the problems of Atlantic County by the enactment of amendments to the County Improvement Authorities Act, L. 1979, c. 275 (N.J.S.A. 40:37A-107 et seq.). While the authority under these amendments is generally available to any county in New Jersey, the Senate, County and Municipal Government Committee Statement for Assembly Bill 3430  L. 1979, c. 275  reveals that: "The purpose of Assembly 3430 is to afford the Atlantic County Improvement Authority powers to deal with the current housing crises in Atlantic City."
[8] The court is mindful of the fact that these cases addressed classifications founded upon environmental considerations. It is this court's opinion, however, that the cases should not be narrowly construed and that the rules stated therein have a broader application, inclusive of the present case.